Thurman **ROBERTS** et al., Appellants,

**v.**

**CAPITOL CITY STEEL COMPANY, Inc.,**
**Appellee.**

**No. 11127.**

Court of Civil Appeals of Texas.

Austin.

March 4, 1964.

Rehearing Denied March 25, 1964.

772

J. C. Hinsley, Austin, for appellants.

McKay & Avery, Charlie D. Dye, Austin, for appellee.

HUGHES, Justice.

This suit was brought by Capitol City Steel Company, Inc., appellee, against Thurman Roberts and F. T. G. & G., Inc., a corporation, to recover the sale price or reasonable value of certain steel supplies and materials sold and delivered to appellants, and for attorney's fees. Trial was to a jury. Based upon its verdict, and after disregarding certain issues found in favor of appellee concerning a $1000.00 payment, judgment was rendered against Thurman Roberts for the sums of $575.14 and $2,515.-86 and against Mr. Roberts and F. T. G. & G., Inc., jointly and severally for the sum of $5,052.04 and $1,000.00, attorney's fees.

Appellee does not complain of the judgment in any respect, and prays for its affirmance.

Appellants have thirty-eight points of error and they seek reversal and rendition in their behalf or a remand.

Appellants group their first sixteen points in briefing, and we will so consider them. Generally, these points are that there was no evidence showing that either appellant was indebted to appellee and that the verdict of the jury finding such indebtedness was against the great weight and preponderance of the evidence. Specifically, these points attack certain jury findings on the same grounds, which findings are:

1. (Sp. I. 1) Joe Rogers was an apparent or ostensible agent of Thurman Roberts in signing the name of Roberts to a contract with appellee dated November 3, 1960. [Liberty County job]

2. (Sp. I. 7) That on the Liberty County job appellants were engaged in a joint adventure.

3. (Sp. I. 14) That the materials sold and delivered by appellee on the Victoria

County job were purchased at the instance and request of Thurman Roberts or his agents for his individual account.

4. (Sp. I. 17) That the reasonable value of the materials sold and delivered by appellee on the Port Bolivar job was $666.98.

5. (Sp. I. 18) That the materials referred to in 4, supra, were furnished to Thurman Roberts at the special instance and request of himself or his authorized agents, and for his individual account.

6. (Sp. I. 19) The finding here is similar to the preceding finding except that it relates to the Jasper County job, as to which no recovery was decreed.

7. (Sp. I. 23) That appellee did not fail to credit appellants on the Liberty County job with the sum of $2,617.98, as shown by its credit memorandum.

Mr. Thurman Roberts was interested in a number of corporations and associations which were engaged in the business of building State highways, usually under subcontracts with the prime contractor with the State. The names of these concerns are: appellant, F. T. G. & G., Inc., Roberts & Whitney, Inc., Roberts & McCorkle, Incorporated, Roberts and McFarland, Roberts and Cummings and Roberts and Nelson. Also, the evidence shows that F. T. G. & G., Inc., did business under the name of Roberts and Nelson.

All of these concerns had their headquarters in a two-room office in Driftwood, Texas. The office force consisted of Mrs. Hisako Roberts, wife of appellant Thurman Roberts, a bookkeeper, payroll clerk, and Mr. Roberts. Mr. Joe Rogers, a field superintendent, had a desk there.

The business of the various concerns was kept separate, as to their records, mainly through the use of rubber stamps.

Generally, it is the position of Thurman Roberts that he did not contract individually as to any account made the subject of this suit; that such accounts, if incurred, were those of F. T. G. & G., Inc.

Mr. Malcolm Milburn is president of appellee company. The business of this company, in part, is to sell steel and steel fabrications to contractors or subcontractors engaged in constructing State highways.

Prior to the letting of such contracts by the State Highway Department, appellee, and other similar companies, mailed to bidding contractors or subcontractors, known to them, lists of prices on goods which it proposed to furnish successful bidders. These highway lettings are held in Austin at stated times and as many as 150 interested bidders or suppliers attend. On the day or night before such lettings, bidders and suppliers, such as appellee, confer and adjust their prices and bids. If a bidder is successful, he normally enters into a contract with a supplier on the basis of his proposal to furnish needed materials.

It was in such manner that Mr. Milburn met and agreed with Mr. Rogers on the Liberty County job. The formal contract was signed by Joe R. Rogers, signing first the name of Mr. Roberts, then his own name. Mr. Milburn authorized the execution of the contract for appellee.

Mr. Rogers testified that a short time after signing this contract he notified Mr. Milburn that he made a mistake in signing it, that it should have been signed for F. T. G. & G., Inc. and not for Mr. Roberts. Mr. Milburn replied that he was holding Mr. Roberts responsible.

On at least one previous occasion Mr. Milburn had contracted with Mr. Roberts on a contract signed in the same manner as this contract was signed and in what appears to be the same handwriting. There is no evidence that Mr. Roberts repudiated such collateral contract.

Mr. Milburn testified that he, on many occasions, prior to the execution of the Liberty County contract, had, in pre-highway lettings, discussed the prices of his products with Mr. Roberts and Mr. Rogers in the presence of each other and that both Mr. Roberts and Mr. Rogers had accepted his prices on such occasions for sale of steel to Thurman Roberts. Mr. Milburn also testified that he had never sold Mr. Rogers, individually, any of his products.

Mr. Thurman Roberts was billed individually for the accounts involved in this suit. He did not, prior to the institution of this suit, complain that he had been improperly billed.

Mr. Rogers testified that he was employed by Mr. Thurman Roberts until he went to work for F. T. G. & G., Inc., in 1958, although there is evidence that this corporation was not formed until August 1960.

Mr. Clarence A. Pruitt who had been employed by appellee for about six years and during 1960 and 1961 was its purchasing agent and office manager testified he knew Mr. Joe Rogers, having met him with Mr. Thurman Roberts at highway lettings. Mr. Pruitt testified, "Well, when I talked with Joe Rogers, he was Joe Rogers with Thurman Roberts, and whenever we talked over the phone about a job, he said to go ahead with it, and didn't give any instructions about the billing or anything, and so we just assumed that it was the normal way, bill it to Thurman Roberts."

Mr. Rogers testified:

"Q Did you ever call or refer to yourself over the telephone to anybody in the ordering of any merchandise on any of these jobs as—'This is Joe Rogers with Thurman Roberts?'

"A I am sure I have, yes, sir.

"Q Would this be true as to when you called, say, the Capitol City Steel Company?

"A Well, normally I would just say 'Joe Rogers.' I was well acquainted enough that they would know who was speaking."

The evidence also shows that Mr. Milburn, for appellee, subsequent to the construction jobs involved in this case, "bid

steel jobs" to Roberts and Whitney, Inc. and to F. T. G. & G., Inc. Also, that on some materials billed to Thurman Roberts and to Roberts and Whitney, Inc., he had filed claims with the prime contractor, Trotti and Thompson.

Mr. Thurman Roberts testified that he had no connection, individually, with the jobs out of which appellee's claims arose.

■ There are other bits of evidence which we could tediously recite to sustain the jury finding that Mr. Rogers was the ostensible or apparent agent of Thurman Roberts in signing the Liberty County contract. While we have read the statement of facts, 673 pages, and have examined the relevant exhibits we refrain from reciting further evidence on these points because in our opinion the evidence we have recited is sufficient to demonstrate that the answer of the jury to Special Issue No. 1 is not without evidence to support it and is not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. This conclusion we reach from an examination of the entire record.

■ The Court, in its charge, in connection with the submission of the first Special Issue defines an apparent or ostensible agent as one "whom the principal either intentionally or by want of ordinary care induces third persons to believe to be his agent although he has not either expressly or by implication conferred authority on him."

There were no objections to this charge and we accept the above statement of law as correct, and cite no authorities to sustain it.

Appellants, as shown above, challenge the jury finding that they were joint adventurers on the Liberty County project. We will not discuss the state of the evidence as to this issue for the reason that the liability of F. T. G. & G., Inc., on this contract is admitted by it and the liability

of Thurman Roberts follows from the jury finding sustaining the execution of the Liberty County contract by his ostensible agent.

Appellants pleaded, as to the Liberty County project that, "in fact any of such materials which were sold and delivered were sold and delivered to F. T. G. & G., Inc."

■ We also overrule the points relating to the jury finding that the steel products sold and delivered for the Victoria project were sold and delivered at the instance and request of Thurman Roberts and for his individual account.

The evidence previously recited is applicable to these points and will not be restated. We only need to observe that Mr. Roberts knowing that he was being billed and charged for such products received and utilized them without protest, other than the original complaint about the execution of the contract, until after the institution of this suit.

This jury finding is, as we understand it, immaterial if liability of Mr. Roberts under the contract is, as we hold, sustained under the jury answer to Special Issue No. 1.

■ Appellants' points relating to the jury finding as to the reasonable cost of materials furnished by appellee on the Port Bolivar job are also overruled.

There was no written contract on this project. Invoices sent to Mr. Roberts by appellee itemized the materials purchased, sold and shipped, and gave their prices. Mr. Milburn testified as to each invoice that the prices were reasonable. There was no refuting evidence.

The jury finding that the Port Bolivar materials furnished by appellee were furnished to Mr. Roberts for his individual account is also sustained against the points directed to it.

Mr. Clarence Pruitt, appellee's office manager, testified:

"Q All right, sir. Now, on the Port Bolivar job, did anybody place an order with you on that job?

"A Joe Rogers.

"Q Joe Rogers. Did he order that by telephone or in person?

"A Joe brought the plans by on that one, and we went over it, and we took it upstairs to our estimator up there, and he showed us what he wanted, showed us what he wanted a price on. Our estimator took it off and made him a price on it, and I called Joe Rogers and gave him the price.

"Q All right. And did he order it from you?

"A Yes, he did.

"Q Joe Rogers ordered it from you?

"A Yes, sir.

"Q Now, did Mr. Thurman Roberts ever talk to you about that job?

"A No."

This testimony taken along with all the other evidence relating to Joe Rogers and his relation to Thurman Roberts, the manner in which Mr. Roberts conducted his business, and the fact that Mr. Roberts was billed for them without timely complaint is ample evidence to sustain the liability of Mr. Roberts.

Regarding the actual delivery of the materials sold by appellee on the Port Bolivar project the evidence is circumstantial, but ample. Some of the materials were receipted for by one Roy Whitney. Mrs. Hisako Roberts testified that she knew Mr. Whitney and that he had been on jobs that she was "acquainted with." There is evidence of a more substantial nature by Mr. Johnson Gault, employed by the Texas Highway Department as Manager of the Materials and Tests Division. As such official, he had charge of testing materials used in highway construction. He testified that the records of the office of which he was in charge showed that the materials sold by appellee on the Port Bolivar job were tested and used in such project. His records showed that some of these materials came from appellee. As to other materials the source was not shown but the records did not show duplicate purchases of such materials. This evidence coupled with other testimony showing the sale and shipment of the materials by appellee, the receipt on the job by some one and their incorporation in the work is, in our opinion, adequate evidence to support the jury finding that they were actually delivered to and as ordered by Mr. Roberts.

Special Issue No. 19 relates to the Jasper County project as to which appellee did not recover because of a finding that its claim was barred by limitations and about which ruling it does not complain; hence, we will not discuss the points relating to this issue.

Special Issue No. 23 found that a credit of $2,617.98, claimed by appellants, was in fact given.

Appellee issued and introduced in evidence, over appellants' objection, a credit memorandum to Thurman Roberts dated November 21, 1960, as a "Credit for steel picked up and brought back," in the sum of $2,617.98. The invoices on the Liberty County job, here sued on, are dated January 25, 1961, April 7, 1961, and April 12, 1961, all after the credit memorandum. Mr. Milburn testified to the same effect. Furthermore, the evidence shows an invoice to Thurman Roberts dated November 18, 1960, in the amount of $2,617.98, the exact amount of the credit memorandum dated November 21, 1960. It would stretch credulity too far to label this a coincidence. The evidentiary points relating to Special Issue No. 23 are overruled.

Appellants jointly brief the seventeenth and eighteenth points which relate to the failure of the Court to grant their motion for a mistrial based on the conduct of counsel for appellee in asking his own witnesses leading questions.

We have noted the length of the record in this case. The taking of testimony commenced 2–12–63 and ended 2–18–63. Appellants objected 22 times to the leading nature of questions asked by appellee's counsel, eleven of which were sustained.

 Appellants do not contend that any single leading question was so harmful as to require a mistrial. In fact, they do not bring any of such questions forward in their brief. They do contend that there was a persistent course of such questioning as to be prejudicial. As stated, we have read the entire statement of facts. The trial was vigorously prosecuted and defended. Witnesses were closely questioned about numerous documents. In such instances it is often necessary to lead a witness up to the point in controversy. This kind of leading is not only not erroneous, it is proper. Nor is it improper to lead a witness by stating in the questions undisputed facts. See Sec. 571, et seq., Texas Law of Evidence, McCormick and Ray, Vol. 1, 2d ed.

 Since it is not claimed that the leading nature of any particular question constitutes reversible error, we cannot say that the asking of eleven leading questions, assuming as we do the correctness of the Trial Court's ruling, in a trial of this length and complexity is of itself reversible error under Rule 434, Texas Rules of Civil Procedure.

 By their nineteenth point appellants assert error in the admission in evidence of the contract relating to the Liberty County job. The objections were that its execution had not been proved and that it was not properly admitted as a business record under Art. 3737e, Vernon's Ann.Civ. St. We have discussed this contract and the circumstances surrounding its execution fully in sustaining the jury finding that Joe Rogers was the ostensible and apparent agent for Thurman Roberts when he executed it on behalf of Mr. Roberts. This contract was executed by appellee, Joe Rogers, and the jury found Mr. Rogers was authorized to execute it for Thurman Roberts, a finding we have approved. It was admissible in evidence.

 Appellants, by their twentieth and twenty-first points, complain of the admission in evidence of two documents, one relating to a highway project in Newton County, not here involved. This document bore the names of Thurman Roberts, Joe R. Rogers and was signed for appellee by Mr. Milburn. The other instrument was a letter concerning the Newton County project on the letterhead of Thurman Roberts being apparently signed by Joe R. Rogers and was addressed to and received by Mr. Milburn.

The objections to these instruments were that they were not relevant to any issue in this case and that their executive had not been established, at least at the time they were admitted.

These exhibits bore on the authority of Mr. Rogers to execute the Liberty County contract for Thurman Roberts. Mr. Rogers was not asked about his signature on these documents, however, his admitted signature was before the jury and they were at liberty to compare it with his signature on these papers. Art. 3737b, V.A.C.S.

We are also of the opinion that these documents were admissible on the question of Mr. Rogers' authority to act for Thurman Roberts if the evidence discloses that he had knowledge of them. The relationship between Mr. Rogers and Thurman Roberts, as herein shown, is such that we believe it is circumstantially sufficient to prove his knowledge. We, therefore, overrule these points.

 The twenty-second point is that error was committed in admitting in evidence

a credit memorandum to Thurman Roberts, Inc., for $2,617.98, on the ground that the record does not show a corporation of that name. This is the credit which appellants say was not allowed them, a matter discussed above. This evidence was the basis of appellants' claim of credit. It is most strange that they now complain of its being in evidence. It may not have done them any good but it certainly did them no harm. The point is overruled.

 The next two points (23 and 24) complain of the admission in evidence of two invoices, one apparently a duplicate of the other, for $2006.56, from appellee to Thurman Roberts covering steel shipped to Jasper County. There was no recovery on this invoice as the claim based on it was held barred by limitations. Any error respecting its admission is harmless.

The twenty-fifth point is that there was error in admitting in evidence a letter on the letterhead of Thurman Roberts addressed to and received by Mr. Malcolm Milburn and signed for Thurman Roberts by his wife, Hisako Roberts. This letter refers to the Jasper County project as "our job." The evidence shows that Mrs. Roberts worked in her husband's offices, helped keep the records of all jobs he was interested in and frequently wrote letters for him regarding them. Since the Jasper work is no longer involved in this case the letter is of small probative value on any issue herein. The point is overruled.

The twenty-sixth point is that there was error in admitting in evidence a copy of a letter from Roberts and Whitney to Menefee Bros., a copy going to appellee, relating to the Jasper County job, the letter being signed by Thurman Roberts' and in which the addressee, prime contractors on the job, was requested to pay appellee $706.56 for steel furnished by it for the Jasper County construction. Appellee states that this letter was relevant to the question of the statute of limitations interposed by appellants and sustained with regard to the Jasper County work. Since this matter is not before us, we will not discuss it. We are unable to discern any prejudicial effect which this letter could have had upon the remaining issues tried by the Court and jury. The point is overruled.

Points twenty-seven through thirty-one complain of the admission in evidence of five exhibits. The first was copy of an invoice from appellee to Thurman Roberts for steel shipped to Victoria for which no charge was shown. The second was a similar invoice, no charge being shown. The third was a similar invoice showing no charge. The fourth was a similar invoice, the charge shown being $2231.04. The fifth was a similar invoice, the charges shown being $11.69 and $273.13.

 These exhibits were all yellow copies retained by appellee. Appellants contend that some of these exhibits contain alterations which are not properly part of a business record. We need not discuss this contention because the original of the two invoices which contain charges against appellants both being receipted by Joe A. Fuller, superintendent for the prime contractor, are in evidence without objection. Receipt of copies in evidence is harmless where the originals are in evidence without objection. Receipt in evidence of copies of invoices showing no charges is harmless, even if improperly so received. These points are overruled.

The thirty-second point is that error was committed in admitting in evidence a work order prepared by Mr. Milburn for appellee on the Victoria County job. The objection made to the admission of this work order was that it is hearsay and self serving.

 Mr. Milburn testified regarding this instrument as follows:

"Q Mr. Milburn, who did you bid this Victoria County job to?

"A Thurman Roberts.

"Q Approximately when was it bid to him?

"A About December 16, 1960.

"Q Subsequent, Mr. Milburn, to the bidding of that job, state whether or not you thereafter prepared that work order.

"A Yes.

"Q Is that the usual manner in which you conduct your business?

"A Yes.

"Q Does that—state whether or not that work order pertains to the Victoria County job we are discussing.

"A Yes.

"Q State whether or not that record is kept in the usual course of business of Capitol City Steel Company.

"A Yes.

"Q You say it is?

"A Yes.

"Q Was it made at or about the date indicated on the document?

"A Yes.

"Q Do you have the general custody, and charge of these records?

"A Yes."

It is our opinion that this work order was admissible under Art. 3737e, V.A.C.S.

The thirty-third and thirty-sixth points of error are that the Court erred in admitting in evidence an invoice from appellee to Thurman Roberts for $416.96 for steel products for the Port Bolivar job the shipping date shown being 11–8–61, and what purports to be a duplicate of this invoice with certain variations. The objection to the original invoice was that there was no proof that appellants had ordered or received the steel products listed and that it was hearsay, irrelevant and immaterial and that it was repetitious, the duplicate having already been introduced.

The original of this invoice accompanied the shipment and was receipted by Roy Whitney, an associate of Thurman Roberts. A copy of this invoice was mailed to Thurman Roberts. This instrument was proved a business record of appellee by testimony of Mr. Milburn similar to that quoted above. It was admissible. Admission in evidence of the duplicate, if error, was harmless error, the discrepancies between it and the original being minor.

Appellants' thirty-fourth, thirty-fifth, thirty-seventh and thirty-eighth points are the Court erred in admitting in evidence certain exhibits offered by appellee. These exhibits all pertain to the Port Bolivar job, and are numbered 26A, 26B, 29 and 30. Exhibit 30 is a substantial copy of 26B and its admission, if erroneous, is harmless. 26B is an invoice to Thurman Roberts on the Port Bolivar job, a copy being mailed to him. It was a business record kept by appellee and so proved by Mr. Milburn in conformity with his testimony previously quoted. It was admissible. 26A is a copy of a freight bill for steel products shipped by appellee to Thurman Roberts. The charges shown, $7.18, were, Mr. Milburn testified, reasonable. This exhibit was proved a business record by Mr. Milburn and was admissible. Exhibit 29 was a copy of an invoice of materials billed by appellee to Thurman Roberts on the Port Bolivar job, a copy being mailed to Thurman Roberts. It was established as a business record of appellee by Mr. Milburn and was admissible. These points are overruled.

After reviewing all of the points presented by appellants and finding no reversible error, the judgment of the Trial Court is affirmed.

Affirmed.