Raby W. **PADGETT** and Lori Padgett, Appellants,

v.

**BERT OGDEN MOTOR'S, INC.,** Appellee.

No. 13–92–187–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 9, 1993.

Rehearing Overruled Jan. 13, 1994.

---

Rene Correa, Weslaco, for appellants.

Esmeralda Garcia, Mission, for appellee.

Before GILBERTO HINOJOSA, NYE,[1] and DORSEY, JJ.

*OPINION*

GILBERTO HINOJOSA, Justice.

Raby and Lori Padgett appeal from a take-nothing judgment rendered against them and in favor of Bert Ogden Motors, Inc., (Ogden) on the Padgetts' claims for negligence, fraud and DTPA violations[2] in connection with the repair and sale of a used car. By three points of error, the Padgetts complain that the trial court erred in instructing a verdict on the fraud and DTPA causes of action and on certain damages issues, and in not allowing the jury to view an exhibit to a video deposition. We reverse and remand in part, and affirm in part.

While visiting her family in December of 1986, Lori and her father, Raby Padgett, decided to purchase a car for her use at college in east Texas. They visited several dealerships, including Ogden's. While the Padgetts were looking around at Ogden's dealership, salesman Alex Garcia showed them several cars. They finally focused on a 1984 Mazda GLC, but did not decide to buy it at that time. The Padgetts returned to Ogden's dealership on December 31, 1986, and decided that they would like to purchase the GLC. When they spoke to Garcia about purchasing the car, he then mentioned that the car had been in an accident, but that it had been "completely repaired." The Padgetts then spoke with the shop foreman at Ogden's auto body shop who had repaired the car. He said that the car had been "completely fixed" and was safe. The Padgetts then decided to purchase the car, which Lori's father paid for.

Lori then took possession of the car, returned to college, and had no major accidents or problems with the car until November 1987, when she began to hear a scraping noise and noticed that the car would pull to one side when she shifted gears, put on the brake or accelerated. On November 22, while Lori and her boyfriend were out driv-

---

1. Former Chief Justice, retired April 30, 1993.

2. Texas Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.46 (Vernon 1987).

ing the car, Lori began to lose control of the car, which from that point on was essentially inoperable. After consulting with several mechanics, Lori learned that the frame had been broken.

Lori finally took her car to Austin Langford, an automobile frame specialist with forty years' experience. Langford testified that, upon inspecting Lori's car, he determined that the problems that Lori experienced were due to the broken frame. Langford noticed that the left frame rail was coming apart and saw burn marks which indicated that the frame had been heated and straightened. Langford testified that heating the frame rail on this type of car causes it to lose its temper and become brittle, and therefore the prior repair work had not been done properly. However, Langford also testified that, in his opinion, the car had been partially, but not completely, repaired. Langford eventually repaired the car himself in July 1988, by replacing the damaged parts and welding in a new frame.

In defense of the dealership, both James Stahl, the body shop manager for Ogden, and Bert Ogden, the president of the dealership, testified that only a small amount of heat was used to straighten the frame and that the repair was done in a reasonable and prudent manner, considering the value of the car and the cost of the present repair as opposed to the cost of welding on a new frame rail.

By their first point of error, the Padgetts complain that the trial court erred in granting an instructed verdict against their DTPA and fraud causes of action.

■ A directed or instructed verdict is proper if reasonable minds can draw only one conclusion from the evidence. The task of both the trial court and the reviewing appellate court is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented, considering all of the evidence in the light most favorable to the party against whom the verdict was instructed and discarding all contrary evidence and inferences. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *City of San Benito v. Cantu*, 831 S.W.2d 416, 422 (Tex.App.—Corpus Christi 1992, no writ).

■ The elements of common law fraud are: (1) that a material representation was made, (2) that it was false, (3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion, (4) that he made it with the intention that it be acted upon by the other party, (5) that the party acted in reliance upon it, and (6) that he thereby suffered injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

■ In the present case, Ogden contends that there was no evidence that its statement that the car had been fixed was a false representation. Certainly the evidence raises a difference of opinion by the experts as to whether the method Ogden used to repair the car in fact "fixed" it properly and completely. However, pure expressions of opinion are not generally actionable under common law fraud. *Trenholm*, 646 S.W.2d at 930; *Angelo Broadcasting, Inc. v. Satellite Music Network, Inc.*, 836 S.W.2d 726, 733 (Tex.App.—Dallas 1992, writ denied); *Bryant v. Transcontinental Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

■ Whether a statement constitutes merely an expression of opinion, commonly called "puffing," or an actionable misrepresentation depends on several factors, including the specificity of the statement and the comparative levels of the buyer's and the seller's knowledge concerning the subject matter of the transaction. *See Angelo Broadcasting*, 836 S.W.2d at 733; *Bryant*, 821 S.W.2d at 190. In the present case, the evidence showed that Bert Ogden and his body shop manager had specialized knowledge concerning the repair of cars and that they specifically inspected and determined how best to repair Lori's car. Under these circumstances, we hold that Ogden's representation that the car had been "completely repaired" and was "completely fixed" was, more than mere opinion or puffing, a precise enough representation of an existing material fact to be actionable under a common law theory of fraud. *See HOW Insurance Co. v.*

*Patriot Financial Services of Texas, Inc.,* 786 S.W.2d 533, 543–44 (Tex.App.—Austin 1990, writ denied); *Wright v. Carpenter,* 579 S.W.2d 575, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ Similarly, with regard to the Padgetts' DTPA causes of action, representing that a used product is in good condition, when it remains in fact in a damaged condition, is actionable as a misrepresentation of the characteristics or of the quality of that product under DTPA § 17.46(b)(5), (7). *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980). In addition, representing that a defective product has been fixed, when in reality it remains defective, also raises an issue as to liability under DTPA § 17.46(b)(13). *See Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex.1977); *Oakes v. Guerra,* 603 S.W.2d 371, 374–75 (Tex.Civ.App.—Amarillo 1980, no writ); *Spicer v. Great Service, Inc.,* 580 S.W.2d 14, 16 (Tex.Civ.App.—San Antonio 1979, no writ); *Burnett v. James,* 564 S.W.2d 407, 409 (Tex.Civ.App.—Dallas 1978, writ dism'd); *Town and Country Mobile Homes, Inc. v. Stiles,* 543 S.W.2d 664 (Tex.Civ.App.—El Paso 1976, no writ). The purchaser is thus entitled to rely on a statement of the adequacy of repair work, though made in the form of an opinion, when it is made by an expert in the field, and an inaccurate statement of this nature may be considered a misrepresentation under the DTPA. *See Burnett,* 564 S.W.2d at 409. Thus, we hold that the present alleged misrepresentations by Ogden that the car was fixed are also actionable under the DTPA.

■ However, Ogden also contends that there was no evidence that the alleged misrepresentations caused the Padgetts to buy the car in question. Reliance and a consequent injury are elements of a cause of action for common law fraud. *See Trenholm,* 646 S.W.2d at 930; *Stone,* 554 S.W.2d at 185. In addition, a DTPA misrepresentation is a producing cause of damages if it, in a natural sequence, excited, contributed to, or factually caused the harm complained of. *Jeep Eagle Sales Corp. v. Mack Massey Motors, Inc.,* 814 S.W.2d 167, 175–76 (Tex.App.—El Paso 1991, writ denied).

■ In the present case, Ogden asserts that, since the Padgetts had already decided to purchase the car before they found out that it had been in an accident and fixed, any misrepresentation about the car being fixed did not affect their decision to purchase. However, Ogden's analysis improperly combines two critical representations: the representation that the car had been in an accident; and the representation that it had been completely fixed. The Padgetts may have been willing to purchase the car before they learned that it had been in an accident. However, once they learned of the accident, the Padgetts clearly indicated that they would not then have bought the car but for the further, and allegedly false, representation that it had been completely fixed, as is evident from Raby Padgett's testimony, as follows:

Q. Had—before you were told that the car had been in an accident but that it had been fixed, had you already made a decision as to whether or not to buy the car?

A. Yes, sir.

Q. Okay. And how—when you were disclosed this information about the car having been in an accident and fixed, did it affect your decision to buy the car?

A. No, sir.

Q. You kept your decision to buy the car?

A. Correct. I did.

Q. Why?

A. I had faith in the fact that it had been fixed. Cosmetically it looked beautiful.

Q. Did what the salesman and the shop man tell you play any significant role in your decision to go through with the sale?

A. They both said it had been fixed.

Q. And so?

A. We went ahead with the purchase.

We hold that there was sufficient evidence to raise a fact issue on causation.

■ Nevertheless, Ogden further argues that the directed verdict was harmless in view of the jury's finding that it did not negligently repair the car. *See, e.g., Group Hospital Services, Inc. v. One and Two Brookriver Center,* 704 S.W.2d 886, 889 (Tex.App.—Dallas 1986, no writ) (the jury's an-

swers to other issues may make any error in the direction of a verdict harmless). Ogden asserts that the jury's failure to find negligence conclusively showed that the car was completely fixed or completely repaired, and that the statements to that effect could not have been misrepresentations. However, under the evidence presented in the present case, we find a remaining fact issue whether the repairs that were done to the car, though not in themselves negligently done, may not have "completely repaired" the car or rendered it "completely fixed" as represented by Ogden. The Padgetts' own expert, Austin Langford, testified that the car had been only partially, not completely, repaired. Because a material fact issue remains concerning the DTPA and fraud causes of action, it was error for the trial court to have directed a verdict, regardless of the jury's answers to questions submitted on the separate theory of negligence. We sustain the Padgetts' first point of error.

By their third point of error, the Padgetts complain that the trial court erred in refusing to allow the jury to view a video tape exhibit to a video deposition of expert witness Austin Langford. To obtain reversal of a judgment based on error in the admission or exclusion of evidence, appellant must show that the trial court did in fact commit error, and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Downen v. Texas Gulf Shrimp Co.*, 846 S.W.2d 506, 512 (Tex.App.—Corpus Christi 1993, writ denied); Tex.R.App.P. 81(b)(1). Generally, reversible error does not exist for erroneous rulings when the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Gee*, 765 S.W.2d at 396; *Downen*, 846 S.W.2d at 512.

In the present case, whether or not the trial court properly excluded the videotape exhibit, we have viewed it and find that it is cumulative and adds nothing to what Langford already testified to in the video deposition played before the jury. The exhibit is a solo performance by Langford standing next to Lori's car and pointing out his observations about the damages and the repair work done by Ogden. However, the damage to, and the condition of, the frame rail as described by Langford is not recognizable on the tape, which would be of little or no use to the jury in analyzing Langford's opinions and determining the material issues in the case. Therefore, we do not believe that its exclusion was harmful. We overrule the Padgetts' third point of error.

The Padgetts' remaining second point of error is not dispositive and we do not address it. *See* Tex.R.App.P. 90(a).

We REVERSE the judgment of the trial court and REMAND the present case for trial of the Padgetts' fraud and DTPA causes of action. We AFFIRM the take-nothing judgment of the trial court on the negligence cause of action.

Former Chief Justice PAUL W. NYE not participating.