**Norma M. CECIL, Appellant,**

v.

**T.M.E. INVESTMENTS, INC., Ernest Tuchscherer and Mary Tuchscherer, Each Individually and D/B/A the Executive Health Spa, and Francis Hamlin Company, Appellees.**

**No. 13–92–670–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 29, 1994.

39

Sidney R. Meadows, Freeland & Meadows, McAllen, for appellant.

J. Preston Wrotenbery, Tina Snelling, Hirsch, Glover, Robinson & Sheiness, Houston, Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, McAllen, Clay Hollis, Hirsch, Glover, Robinson & Sheiness, Brownsville, for appellees.

Before KENNEDY, DORSEY, and GILBERTO HINOJOSA, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This dispute rose after Norma Cecil fell while she was at the Executive Health Spa. Cecil appeals the trial court's take-nothing judgment, which was based partly on a jury verdict and partly on a verdict directed by the court.

In the trial below, Cecil sued T.M.E. Investments, Inc., Ernest and Mary Tuchscherer, both individually and as Executive Health Spa (collectively "T.M.E."), and Francis Hamlin Company. Cecil pleaded causes of action involving premises liability, negligence, breach of warranty, and various product-liability theories. The trial court directed a verdict in favor of the defendants on several claims and submitted the remainder of the case to the jury on negligence and design-defect theories. The jury absolved the defendants of all liability. We reverse and remand in part and affirm in part.

In her first point of error, Cecil contends that the cumulative effect of several errors throughout the trial prejudiced her ability to present her case. Cecil's second, third, and fourth points assert that the trial court erred in refusing admission of deposition testimony and photographic evidence. In her fifth and sixth points of error, Cecil argues that the defendants were improperly allowed to examine a party defendant by leading questions and to present inflammatory jury arguments. Cecil's seventh point complains of error in the trial court's admonishment of Cecil's counsel while in the presence of the jury. In her eighth and ninth points, Cecil maintains that the court erred by granting a directed verdict on several of her theories of recovery and by refusing to submit requested issues. Cecil's final point of error challenges the trial court's decision not to equalize jury strikes after allowing the defendants to coordinate their jury selection efforts.

## I. BACKGROUND

Cecil joined Executive Health Spa in the spring of 1990. On her second day of membership, she fell as she was walking between the pool and hot tub. Cecil broke her hip. This accident, Cecil insists, did not result from her own negligence. Instead, she points to several aspects of the Executive Health Spa pool as likely causes of her injury.

Cecil argues that the coping-stone tiles around the border of the pool are too slippery. Even more critically, she contends, these coping stones were improperly installed on top of the preexisting tiles so that the rim of the pool is not flush with the surrounding concrete deck. Cecil claims this raised edge around the pool led to the unsafe accumulation of water on the deck and created an uneven surface that caused her to lose her balance as she walked along the pool side. Cecil further complains of the improper installation of the handrail at the steps into and out of the pool.

Cecil sued Hamlin Company, who manufactured the coping stones, and T.M.E., who designed and constructed the pool as the owner and operator of the Executive Health Spa. Cecil's original petition also named a third party of defendants, Joseph and Carol Gerlicki, who owned an interest in the Executive Health Spa property prior to Cecil's accident. The Gerlickis settled with Cecil before trial. Significantly, the most harmful error in this case resulted from the trial court's approach to a misjudgment of the Gerlickis' counsel.

## II. CUMULATIVE ERROR

In her first point of error, Cecil asks that we consider the cumulative effect of several

errors throughout the trial to determine whether the errors undermined the fairness of her trial. The record contains some indication that Cecil suffered from the compounding effect of more than one questionable ruling, but Cecil has not preserved the error, if any, underlying many complaints. In fact, Cecil has failed to preserve any complaint that might serve as the basis for reversing any aspect of the trial court's judgment in favor of Hamlin Company. Regarding Cecil's premises-liability claim against T.M.E., however, her point of error regarding the exclusion of Rodney Hamlin's deposition testimony is sufficient by itself to warrant reversal. Consequently, Cecil's appeal does not lend itself to analysis under the cumulative error doctrine. *See Texas Health Enters. v. Krell,* 828 S.W.2d 192, 210 (Tex. App.—Corpus Christi), *vacated by agr.,* 830 S.W.2d 922 (Tex.1992) (cumulative error doctrine applies in cases where the harm from multiple errors may entitle appellant to greater relief than would result from separate consideration of each individual error).

## III. EXCLUSION OF EVIDENCE

In her second, third, and fourth points of error, Cecil contends that the trial court should not have excluded certain deposition testimony and photographic evidence. The trial court must initially determine whether evidence should be admitted or excluded. Tex.R.Civ.Evid. 104(a); *Alvarado v. City of Brownsville,* 865 S.W.2d 148, 154 (Tex.App.—Corpus Christi 1993, writ granted). This decision lies within the discretion of the trial court and will not be disturbed absent a demonstration that the court abused its discretion. *Alvarado,* 865 S.W.2d at 154; *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex.App.—Dallas 1991, writ denied), *cert. denied,* — U.S. —, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992); *see also Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) (discussing the abuse of discretion standard).

### A. RODNEY HAMLIN'S DEPOSITION TESTIMONY

Of Cecil's arguments regarding the exclusion of evidence, her initial complaint involves the deposition of Rodney Hamlin, who was unavailable during trial. After Cecil read portions of the deposition into the record, T.M.E. objected that a nonlawyer had conducted the remainder of the questioning. Hamlin Company joined in this objection. In addition, Hamlin Company further objected that the disputed testimony should be excluded because it involved expert opinion and Rodney Hamlin was designated only as a fact witness. After listening to counsel's arguments outside the presence of the jury, the trial court excluded the disputed testimony, which Cecil presented in a bill of exception.

The testimony in question concerned the coping-stone tiles installed around the edge of the Executive Health Spa pool. Hamlin Company manufactured the coping stones; whether Hamlin Company also advised T.M.E. on how the tiles should be used was an issue contested at trial. In the course of a co-defendant's attempt to ascertain the scope of Hamlin Company's advisory participation in the redesign of the pool, the following exchange took place:

GERLICKI: [H]as, to your knowledge, Hamlin ever installed coping stone in this manner where it's not flush?

HAMLIN: No, sir.

GERLICKI: You have not?

HAMLIN: And in my previous answer I said, I thought the same thing, we had—we had never installed stone like that.

GERLICKI: Would you consider an installation such as this to be an unsafe installation?

HAMLIN: Hamlin would not recommend this kind of an installation if you came to me and wanted to install it that way.

GERLICKI: And why is that?

HAMLIN: Because any time—it's no different when we look at those pictures, and there appears to be like a raised patio area adjacent to the perimeter deck area here—any time there's any type of a step down, you create different elevation problems. People can, unknowingly, step off an edge backwards, because there's—you know, usually you're dealing with multitudes of people around here, and it just causes

problems. So any type of a difference in elevation can be a problem, and we like to make people aware of that before we would go in and do that. And, generally, after the kind of explanation, in our experience with the pools we have built, they opted not to do something like that.

### 1. Participation of a Nonlawyer

T.M.E.'s only objection to the quoted testimony raises the issue of a nonlawyer's participation in the deposition. The record reflects that Cecil and Hamlin were represented by counsel at Rodney Hamlin's deposition. Joseph and Carol Gerlicki, co-defendants who settled before trial, were also represented at the proceeding.

John King and Steve Deck, both from King's law offices, attended the deposition on behalf of the Gerlickis; Deck and King were each entitled "esquire" where identified in the list of appearances. King was present throughout the questioning, but Deck asked the questions during a small part of the deposition. Rodney Hamlin offered the disputed testimony in response to a question propounded by Deck.

Before Cecil read the challenged portion of the deposition, T.M.E. objected that the court could not consider responses to the questions of a nonlawyer. During the ensuing discussion outside the presence of the jury, T.M.E. complained that it was common knowledge that Deck was not a lawyer. Cecil disagreed and offered to swear to her ignorance of this fact, but the court sustained T.M.E.'s objection and excluded the testimony quoted above.

■ As noted above, we cannot overrule the trial court's decision to exclude evidence unless we conclude that the court abused its discretion in making the initial admissibility determination. *See Alvarado,* 865 S.W.2d at 154; *Steenbergen,* 814 S.W.2d at 760. When considering whether the trial court abused its discretion, we should ascertain whether the trial court's ruling served the purpose of thwarting legal gamesmanship and trial by ambush. *Dennis v. Haden,* 867 S.W.2d 48, 51 (Tex.App.—Texarkana 1993, writ denied); *Wells v. HCA Health Servs. of Tex.,* 806 S.W.2d 850, 852 (Tex.App.—Fort Worth 1990, writ denied); *Ramirez v. Volkswagen of Am., Inc.,* 788 S.W.2d 700, 704 (Tex.App.—Corpus Christi 1990, writ denied) (citing *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex. 1987)).

■ Under this standard, we cannot uphold the trial court's ruling. In her responses to the defendants' motions for summary judgment, Cecil specifically relied on Rodney Hamlin's deposition. Considering Rodney Hamlin's unavailability during trial, it should have been obvious to all parties that Cecil would similarly rely on the deposition during trial. While this fact was apparent to all parties, the record suggests that only T.M.E. was aware that part of Rodney Hamlin's deposition was conducted by a nonlawyer. If it was common knowledge that Deck was not a lawyer, as T.M.E. argued, T.M.E. should not have waited until trial to complain that they felt prejudiced by this unusual circumstance.

We do not condone King's practice of allowing a nonlawyer participate in the deposition, but we should not penalize Cecil for King's unprofessional judgment. *Trans-American Natural Gas v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding) (considering the more difficult issue of penalizing parties for *their own* counsel's errors and concluding "that the sanction should be visited upon the offender"). Instead, we must address the greater threat in permitting T.M.E. to profit from lying behind the log by reserving its objection to gain a tactical advantage at trial. Accordingly, we conclude that the trial court erred in sustaining T.M.E.'s only objection to the deposition testimony.

### 2. Expert Opinion or Fact Testimony

■ In addition to the objection regarding Deck's participation in the deposition, Hamlin Company further complained that the disputed testimony involved Rodney Hamlin's expert opinion on coping stones. We disagree.

The quoted testimony pertains to Rodney Hamlin's personal knowledge of Hamlin Company's policies regarding the recom-

mended installation of the coping stones it manufactures. Although the question regarding the safety of an uneven pool edge might appear to call for expert opinion, Rodney Hamlin's answer was not based on expert knowledge. Instead, Rodney Hamlin answered the question by explaining Hamlin Company's policies concerning such an installation. Significantly, Hamlin Company sent Rodney Hamlin to the deposition as its designated corporate representative to testify about just such matters.

The various defendants dispute whether Hamlin Company participated in the redesign of the Executive Health Spa pool by advising on the installation of the coping stones. Initially, T.M.E. attempted to defend its use of the coping stones by claiming that Hamlin Company had recommended the method of installation that Earnest Tuchscherer employed when laying the stones. Although he contradicted himself on this matter at trial, Tuchscherer's deposition testimony clearly supports the claim that Hamlin Company participated in the redesign of the pool.

Significantly, Cecil's pleadings specifically assert Hamlin Company's advisory participation in the redesign of the Executive Health Spa pool. Hamlin Company denied the allegation that they advised T.M.E. to install the coping stones on top of the existing tiles by explaining that Hamlin Company would recommend against this installation. In this context, the deposition excerpt is improperly categorized as expert opinion testimony because it involves Rodney Hamlin's personal knowledge relevant to a contested material fact issue. *Bailey County Appraisal Dist. v. Smallwood*, 848 S.W.2d 822, 826 (Tex.App.—Amarillo 1993, no writ) (distinguishing between fact and expert witnesses by reference to *Baylor Medical Plaza Servs. v. Kidd*, 834 S.W.2d 69, 74 (Tex.App.—Texarkana 1992, writ denied)); *cf. Robledo v. Grease Monkey, Inc.*, 758 S.W.2d 834, 835 (Tex.App.—Corpus Christi 1988, no writ) (witnesses need not actually see the slip and fall to qualify as fact witnesses); *Delaporte v. Preston Square, Inc.*, 680 S.W.2d 561, 564 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)

(questioning a trial court ruling similar to the ruling under consideration).

The Hamlin Company was mistaken in its objection that the disputed deposition testimony was opinion testimony from an improperly identified expert. The trial court would have exceeded its authority by excluding the testimony on this basis. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3–4 (Tex. 1994) (a ruling that does not reflect consideration of governing principles presents an abuse of discretion under *Downer*, 701 S.W.2d at 241–42); *Sims v. Brackett*, 885 S.W.2d 450, 453–54 (Tex.App.—Corpus Christi, 1994, writ denied) (similarily analyzing trial court's ruling in context of governing principles and determining that ruling did not reflect consideration of such principles).

### 3. Effect of Improperly Excluded Testimony

■ Before we can reverse any aspect of the judgment based on the trial court's improper exclusion of the disputed testimony, we must ascertain the effect of the excluded testimony. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex.1994). Unless the testimony is of a nature that its exclusion probably resulted in the rendition of an incorrect judgment, we cannot reverse any part of the trial court's judgment. Tex.R.App.P. 81(b)(1); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992); *Padgett v. Bert Ogden Motor's, Inc.*, 869 S.W.2d 532, 537 (Tex.App.—Corpus Christi 1993, writ denied).

■ The excluded excerpt from Rodney Hamlin's deposition does not affect Cecil's claims against Hamlin Company in the same manner that the excluded testimony affects Cecil's claims against T.M.E. The effect of Rodney Hamlin's testimony is to contradict any evidence that might suggest Hamlin Company's participation in redesigning the Executive Health Spa pool. As applied to any of Cecil's claims against Hamlin Company, therefore, Rodney Hamlin's testimony only further limits the possibility that the jury might have found Hamlin Company liable. Accordingly, the trial court's error in excluding this deposition testimony cannot serve as the basis for reversing the trial

court's judgment in favor of Hamlin Company. Tex.R.App.P. 81(b)(1); *McCraw*, 828 S.W.2d at 757; *Padgett*, 869 S.W.2d at 537.

Although Rodney Hamlin's testimony has no direct bearing on Cecil's theories of recovery against Hamlin Company, this testimony significantly undermines T.M.E.'s defense to Cecil's suit. In both pretrial motions and Ernest Tuchscherer's testimony during trial, T.M.E. attempted to defend its use of the coping stones by claiming that Hamlin Company approved the method of installation.

Rodney Hamlin's deposition sharply contradicts T.M.E.'s claim that Hamlin Company endorsed T.M.E.'s chosen method for installing the coping stones. Consequently, the improper exclusion of this testimony probably affected the jury's evaluation of Cecil's premises-liability negligence claim against T.M.E. As a result, we must reverse the trial court's judgment on this cause of action and remand the issue for retrial. Tex. R.App.P. 81(b)(1); *Mentis*, 870 S.W.2d at 16; *Sims*, 885 at 455–56.

## B. PHOTOGRAPHS OF THE PREMISES

■ Cecil's third point of error complains of the trial court's decision to exclude two of Cecil's four photographs showing the Executive Health Spa pool. The ruling on whether to admit or exclude an exhibit lies within the discretion of the trial court and should not be overruled unless the court has abused its discretion. *See Texas Health Enters.*, 828 S.W.2d at 209; *National Bugmobiles, Inc. v. Jobi Properties*, 773 S.W.2d 616, 618 (Tex. App.—Corpus Christi 1989, writ denied). Furthermore, we cannot reverse a judgment based on the improvident exclusion of a photograph unless the photograph's exclusion probably resulted in the rendition of an incorrect judgment. *See* Tex.R.App.P. 81(b)(1); *Padgett*, 869 S.W.2d at 537.

Without including copies of the pictures, Cecil explains that the excluded photographs depict the edge of the Executive Health Spa pool. Our examination of the record reveals that two of Cecil's other photographs, which were admitted into evidence, show the edge of the pool. In the interest of expedience, the trial court may properly exclude cumula-

tive evidence. Tex.R.Civ.Evid. 403. Moreover, the exclusion of an exhibit that duplicates evidence already admitted is unlikely to result in the rendition of an incorrect judgment. *Padgett*, 869 S.W.2d at 537; *National Bugmobiles*, 773 S.W.2d at 618. With nothing in the record to indicate that the excluded photographs were not cumulative, we cannot sustain Cecil's third point of error.

## C. GEORGE PHELPS'S VIDEO-TAPED DEPOSITION TESTIMONY

■ In her fourth point, Cecil contends that the trial court erred by refusing to allow her to present the video deposition of an adverse witness, George Phelps, during Cecil's case in chief. Citing Rule 202, Hamlin Company argues that Cecil waived any error by failing to present a written transcript of the video deposition as part of the appellate record. Tex.R.Civ.P. 202(1)(e) ("In the event of an appeal, the non-stenographic recording shall be reduced to writing."); *Burr v. Shannon*, 593 S.W.2d 677, 677 (Tex.1980) (absent a contrary order from the trial court, the rules that permit video-taped depositions do not "eliminate the requirement that the recording be reduced to writing").

The need to honor the requirement that the appellant must bring forth a written transcript of the video deposition is well illustrated by the facts of this case. To overrule the trial court's decision to disallow Cecil's use of the video testimony, we would have to conclude that the court ruled without reference to guiding principles. *See Downer*, 701 S.W.2d at 241–42 (discussing this review process). These governing principles require that the court balance the need for expedience against Cecil's right to present her evidence as she deems strategically advantageous. *Jones v. Colley*, 820 S.W.2d 863, 866 (Tex.App.—Texarkana 1991, writ denied) (the court should also consider the noncomplaining party's rights under Tex.R.Civ.Evid. 106 when balancing the principles of Tex. R.Civ.Evid. 403 against complaining party's rights under Tex.R.Civ.P. 207(1)(a)).

To determine whether the court's ruling on this matter defied the relevant guiding prin-

ciples we must weigh the offered testimony against the deposition in its entirety or the testimony as allowed. *See* Tex.R.App.P. 53 (appellant must present a statement of facts sufficient to enable the court of appeals to analyze all matters essential to decide the questions on appeal); *Pentes Design, Inc. v. Perez,* 840 S.W.2d 75, 79 (Tex.App.—Corpus Christi 1992, writ denied) (we must assume that omitted portions of the statement of facts support the trial court's judgment, citing *Englander Co. v. Kennedy,* 428 S.W.2d 806, 806 (Tex.1968)). Thus, even if Rule 202(1)(e) did not require a written transcript of the video deposition, we would nevertheless need a transcription to review the trial court's ruling. Accordingly, we must overrule Cecil's fourth point because she has not preserved the putative error.

## IV. LEADING QUESTIONS

■ In her fifth point of error, Cecil argues that T.M.E.'s counsel was improperly allowed to ask leading questions while examining Ernest Tuchscherer, a T.M.E. party. Initially, the trial court allowed T.M.E. to lead Tuchscherer through questioning on cross-examination because Cecil had called Tuchscherer to the stand during Cecil's case in chief. The court permitted the examination of Tuchscherer by leading questions a second time during the presentation of T.M.E.'s defensive case. Because the decision whether to allow leading questions lies within the discretion of the trial court, Cecil must show that the court abused its discretion by allowing T.M.E. to lead Tuchscherer. *Coronado v. Employees Nat'l Ins. Co.,* 577 S.W.2d 525, 531 (Tex.Civ.App.—El Paso), *aff'd,* 596 S.W.2d 502 (Tex.1979); *Southern Pac. Transp. Co. v. Peralez,* 546 S.W.2d 88, 97 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

### A. DURING CECIL'S PRE-SENTATION—"CROSS-EXAMINATION"

■ In the first instance that Cecil protests, T.M.E.'s counsel asked Tuchscherer, "So these [steps built into the pool] are designed specifically so people can walk out of your pool, correct?" In addressing Cecil's objection that this question improperly lead the witness, the trial court should have been guided by Rule 611, which states, "Ordinarily leading questions should be permitted on cross examination." Tex.R.Civ.Evid. 611(c). Significantly, the official comment to Rule 611 specifically concerns the instant situation:

> The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the "cross-examination" of a party by his own counsel after being called by the opponent (savoring more of re-direct).

*Id.* (cmts.); *see also GAB Business Servs., Inc. v. Moore,* 829 S.W.2d 345, 351 (Tex. App.—Texarkana 1992, no writ) (discussing "cross-examination" of a friendly witness); *accord Perkins v. Volkswagen of Am., Inc.,* 596 F.2d 681, 682 (5th Cir.1979) (considering similar situation under comparable federal rule and finding error in ruling that defense witness would become witness for plaintiff if first called to stand by plaintiff). Although the comment to Rule 611 clearly contradicts the trial court's decision to allow T.M.E. to lead Tuchscherer through his testimony, we find any error harmless. *See Southern Pac. Transp.,* 546 S.W.2d at 97 (in addition to showing error, appellant must show that error probably caused rendition of improper judgment); *accord Perkins,* 596 F.2d at 682 (similar error under comparable federal rule was harmless).

Prior to T.M.E.'s leading question, Tuchscherer had testified about the differences among the Executive Health Spa pool and other pools that Tuchscherer had participated in designing. T.M.E.'s counsel phrased the leading question to summarize and characterize this earlier testimony, which Cecil had elicited. The fact that the leading question involved matters that Cecil had already introduced into the record mitigates the harm from the trial court's error. *See Coronado,* 577 S.W.2d at 531 (finding error harmless when leading questions sought to establish matters previously placed "before the jury through proper questions"). Accordingly, this error cannot form the basis

for reversal. Tex.R.App.P. 81(b)(1); *Southern Pac. Transp.*, 546 S.W.2d at 97.

## B. DURING PRESENTATION OF T.M.E.'S DEFENSE

The second leading question to which Cecil objected involved similar testimony about the steps leading out of the Executive Health Spa pool. During the presentation of T.M.E.'s defense, T.M.E. asked leading questions of Tuchscherer to establish the undisputed depth of the water at the various steps. *See* Tex.R.Civ.Evid. 611(a), (c), cmts. (leading questions are permissible to develop testimony on preliminary matters). After leading Tuchscherer through testimony that the final step from the pool is submerged under only an inch or two of water, T.M.E. asked, "If you're standing on the [top step] and you're in about an inch of water and so you don't have any problems stepping out of [the pool], do you?"

Because Cecil alleged negligence in T.M.E.'s use of a handrail that did not extend out of the pool, the disputed question leads Tuchscherer through testimony on a contested material issue. *Cf. Roberts v. Capitol City Steel Co.*, 376 S.W.2d 771, 777 (Tex.Civ. App.—Austin 1964, writ ref'd n.r.e.) (leading questions should cover testimony only up to the point of controversy). The trial court should have sustained Cecil's objection, but Cecil has not demonstrated any harm in this error.

Earlier in the trial Cecil had asked Tuchscherer, "How do people get out of those pools where there is steps but there's no handrail?" Tuchscherer replied, "They just walk out." Cecil continued this line of questioning in an effort to elicit testimony regarding any difficulties that a person might encounter when trying to exit a pool without using the handrail. Tuchscherer repeatedly refused to acknowledge that the absence of a handrail would present any difficulties. Because this exchange was properly before the jury, we see no harm in the subsequent leading question that concerned the ease of stepping out of the pool from the top stair under a few inches of water. *Cf. Coronado*, 577 S.W.2d at 531 (regarding harm from improper leading question about matters previously before the jury).

Absent an indication that the trial court's error probably resulted in the rendition of an improper judgment, we cannot sustain a challenge based on that error. Tex.R.App.P. 81(b)(1); *Southern Pac. Transp.*, 546 S.W.2d at 97 (to prevail on a point of error based on the use of leading questions, appellant must show both error and prejudice). Consequently, we overrule Cecil's fifth point of error.

## V. IMPROPER JURY ARGUMENT

In her sixth point of error, Cecil contends that the trial court should not have allowed the following jury argument:

Ladies and gentlemen, I'll tell you why Hamlin is here in this lawsuit: Money. You know, Hamlin is a small and a growing prosperous prospering business, and it has served the community well, the Rio Grande Valley, and it will continue to do so. And how is Hamlin rewarded for its efforts and its service to the community? By being hauled into the courthouse on a suit like this.

. . . .

The reasons for the Hamlin Company being in this lawsuit are the things that highway billboard signs are made of. This is an abuse of the judicial system.

Our review of these inappropriate remarks is abridged by the fact that Cecil took no action at trial to preserve any error based on Hamlin's jury argument. *See Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex.1968); *see also Central Nat'l Gulfbank v. Comdata Network, Inc.*, 773 S.W.2d 626, 628 (Tex.App.— Corpus Christi 1989, no writ) (discussing difficulty of reviewing jury argument complaint when appellant has not included transcript of voir dire as part of appellate record).

By failing to lodge a contemporaneous complaint to Hamlin Company's argument, Cecil has waived her right to protest any error that might have been cured at the time. *Otis Elevator*, 436 S.W.2d at 333; *Hartford Accident & Indem. Co. v. Thurmond*, 527 S.W.2d 180, 191–93 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.).

Consequently, we must examine the record to determine whether an instruction to disregard Hamlin Company's improper arguments would have sufficiently remedied the harm. *Goswami v. Thetford,* 829 S.W.2d 317, 321 (Tex.App.—El Paso 1992, writ denied); *Hartford Accident & Indem.,* 527 S.W.2d at 191. Only rarely will an improper argument so prejudicially influence the jury that the harm cannot be cured. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex. 1979) (probability that improper argument caused harm must exceed probability that verdict was based on proper foundation); *see Texas Health Enters.,* 828 S.W.2d at 205 (discussing cases of incurably improper arguments).

Examining Hamlin Company's argument in context of the record that Cecil has provided, we find the likelihood of prejudice less certain than the harm from other arguments that have been held incurable. *Compare Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 756–59 (Tex.App.—Texarkana 1992, writ denied) (unsupported allegations that opposing counsel manufactured evidence and suborned perjury are generally incurable); *In re W.G.W.,* 812 S.W.2d 409, 415, 416 (Tex. App.—Houston [1st Dist.] 1991, no writ) (in custody dispute, attempt to link mother's cervical cancer with immoral conduct was incurable where there was no evidence to support such connection); *Texas Employers' Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 862–67 (Tex.App.—San Antonio 1990, writ denied) (intentional appeal for verdict based on parties' race or ethnicity is incurable); *and Howard v. Faberge, Inc.,* 679 S.W.2d 644, 649–50 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (demonstration of product's nonflammability by counsel's attempt to ignite his arm during closing argument was incurable when experiment was not cumulative of evidence adduced during trial); *with State v. Sides,* 348 S.W.2d 446, 451 (Tex.Civ. App.—Dallas 1961, writ ref'd n.r.e.) (argument emphasizing adverse judgment's negative effect on local economy was improper but not incurable). Because Hamlin Company's improper jury argument was not incurable, Cecil has failed to preserve the error by failing to object. Without reaching any issues presented by the omission from the

appellate record of a transcript of the voir dire, we overrule Cecil's sixth point of error.

## VI. ADMONISHMENT OF COUNSEL IN THE JURY'S PRESENCE

 In her seventh point of error, Cecil argues that the trial court should not have admonished Cecil's counsel in the presence of the jury. As with the improper jury argument, Cecil has waived all but incurable error by failing to either object or request a remedial instruction at the time of the admonishment. *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 719 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *see also Brentwood Fin. Corp. v. Lamprecht,* 736 S.W.2d 836, 841–43 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) (failure to object waived complaint regarding trial court's comments during voir dire); *Texas Employers' Ins. Ass'n v. Draper,* 658 S.W.2d 202, 209 (Tex.App.—Houston [1st Dist.] 1983, no writ) (failure to request remedial instruction waived complaint regarding trial court's prejudicial comments).

The admonishment that Cecil complains of was recorded as follows:

CECIL: Mr. Tuchscherer, I'm going to hand you what has been marked as Plaintiff's Exhibit No. 17. Does that fairly and accurately represent the hot tub area that you've been testifying about at the Executive Health Spa?

HAMLIN: I object, Your Honor. There is no time frame; there is no anything to that predicate.

CECIL: I'm asking him as to what he's testified.

COURT: **Sir, you can't ask him to testify about that at all, sir, because it's not admitted into evidence. There's been no predicate in this matter, has not been admitted. Now I'm not having him to testify to something you're just showing him.**

CECIL: I'm just asking him ...

COURT: **Sir, you take your seat and take that photograph. I'm not going to let him testify to something that's not—and I wish—you will not display that to the jury. Please take your seat, sir. I'm**

**going to declare a recess in a few minutes, and I'm going to talk about these things, sir.**

Considering this exchange in light of the entire case, we cannot conclude that the admonishment caused harm, if any, that could not have been cured by an instruction to disregard the remarks. Cecil has, therefore, failed to preserve this complaint, and we must overrule her seventh point of error.

## VII. DIRECTED VERDICT

In her eighth point, Cecil contends that the trial court erred by granting directed verdicts on certain of her product-liability and negligence claims. The court directed verdicts for Hamlin Company on Cecil's marketing-defect theory and on the claim that the improper installation of coping stones created an unsafe raised edge. Additionally, the trial court directed a verdict in favor of all defendants on Cecil's claim for gross negligence.

■ In reviewing the trial court's directed verdicts, we must consider the evidence in a light favorable to Cecil's claims. *See White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 90 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.). If probative evidence raises an issue of material fact on the elements of a claim directed in favor of the defendants, we must reverse the judgment and remand that claim for retrial. *White*, 651 S.W.2d at 262; *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Kelly*, 832 S.W.2d at 90.

### A. MARKETING DEFECT

■ Cecil argues that the trial court erred by directing a verdict on Cecil's claim the Hamlin Company marketed the coping stones without warning of the stone's slipperiness. To avoid the trial court's directed verdict, Cecil had to present evidence on each of the following elements: (1) the risk of an unreasonable danger in a foreseeable use of the coping stones; (2) Hamlin Company's knowledge, or presumed knowledge, of this risk at the time it sold the coping stones; (3) the absence of instructions or a warning label that would have protected Cecil from the risk; and (4) the causal relationship between Cecil's injury and Hamlin Company's failure to warn. *Jobe v. Penske Truck Leasing Corp.*, 882 S.W.2d 447, 450 (Tex.App.—Dallas 1994, n.w.h.) (citing *USX Corp. v. Salinas*, 818 S.W.2d 473, 483 (Tex.App.—San Antonio 1991, writ denied)); *see also Caterpillar, Inc. v. Shears*, 881 S.W.2d 923, 927–28 (Tex. App.—Corpus Christi 1994, n.w.h.).

■ The absence of instructions to accompany the coping stones was not contested at trial. Also, the improperly excluded deposition testimony of Rodney Hamlin indicates Hamlin Company's knowledge of any risk inherent in T.M.E.'s raised-edge installation of the coping stones. Nevertheless, we cannot find any evidence that the coping stones were unreasonably dangerous or that the absence of accompanying instructions or warnings caused Cecil's injury.

In a marketing-defect suit, an unreasonably dangerous product must present a threat of a harm that would allude the common perception of the product. *See Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387–88 (Tex.1991) (citing Restatement (Second) of Torts § 402A, cmts. i, j); *USX Corp.*, 818 S.W.2d at 483; *see generally Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979) (discussing the proper definition of "unreasonably dangerous" in a design-defect case). *Compare* 3 State Bar of Texas, Texas Pattern Jury Charges PCJ 71.05 (1990) (regarding design defects) *with* PCJ 71.06 (regarding marketing defects). Even if the coping stones around the pool presented a danger to Cecil, she adduced no evidence to show how that danger was inscrutable or beyond the contemplation of the ordinary consumer. As a result, we must affirm the trial court's directed verdict on this claim.

### B. NEGLIGENT INSTALLATION OF COPING STONE

■ Cecil asserts further error in the trial court's award of a directed verdict in favor of Hamlin Company on her claim pertaining to the defective design of the Executive Health Spa pool. Cecil complains that this directed verdict foreclosed her right to

present the jury with a question regarding Hamlin Company's strict liability relating to the defective design of the pool.

We note that an error in the design of the coping stones would raise strict-liability issues, but errors in the design of the pool must be addressed under theories of negligence. *See Wochner v. Johnson,* 875 S.W.2d 470, 475–77 (Tex.App.—Waco 1994, n.w.h.) (distinguishing between negligence and strict liability in suit against seller of materials and plans for home construction); *Hanselka v. Lummus Crest, Inc.,* 800 S.W.2d 665, 666 (Tex.App.—Corpus Christi 1990, no writ) (concluding that cause of action based on flawed design of factory lies in negligence rather than strict liability); *Bennett v. Span Indus., Inc.,* 628 S.W.2d 470, 472–73 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (absent proof of design defect in roofing product, roofing manufacturer might be held liable only under negligence theories). Consequently, Cecil must show a breach of the duty of care that Hamlin Company owed her before she can hold Hamlin Company liable for the installation of coping stones. *See Hanselka,* 800 S.W.2d at 667 (noting that plaintiff must also show that breach proximately caused injury); *Bennett,* 628 S.W.2d at 473.

Because no legal relationship connects Hamlin Company with Cecil, any duty must rise from the probability of injury to Cecil and from Hamlin Company's knowledge of that danger. *See Hanselka,* 800 S.W.2d at 668 (citing *Bennett,* 628 S.W.2d at 473–74). Cecil's evidence of Hamlin's knowledge of the danger lies in two facts. First, Cecil notes that T.M.E. purchased the coping stones after consulting with Hamlin Company to select a useful material to use as a border around the Executive Health Spa pool. Second, Cecil points to evidence that an employee of Hamlin Company mentioned that the completed pool "sure looks nice" as he was delivering chemicals to treat the pool water.

Cecil's first point is undermined by the fact that T.M.E. solicited estimates for the cost of Hamlin Company's installation of the coping stones and then decided to install the tiles itself. Ernest Tuchscherer testified that his purchase of the coping stones was not based on Hamlin Company's advice and that he recalled no one from Hamlin Company discussing proper methods for installation.

In regard to Cecil's second point, the Hamlin Company employee who mentioned that the pool looked nice was involved in selling water treatment equipment and chemicals. There was no indication that this employee had any experience in pool construction, and there was no other evidence of Hamlin Company's participation in the installation of the coping stones.

Even considering this evidence in a light favorable to her claim, we cannot say that Cecil has raised an evidentiary dispute regarding Hamlin Company's knowledge of any danger in the design of the pool. Accordingly, we must overrule Cecil's complaint. *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd) (the trial court may withdraw the matter from the jury if the evidence raises no more than a mere suspicion of the proposition).

### C. GROSS NEGLIGENCE

██ In her final challenge to the trial court's directed verdicts, Cecil complains of the disposition of her gross-negligence claim for exemplary damages. To overrule the trial court's directed verdict on this claim, we would need to find evidence on each of the two components of gross negligence: (1) the defendants' conscious indifference to, or actual knowledge of, an extreme risk (2) creating the likelihood of serious injury as a result of the defendants' conduct. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994) (hereafter *"Moriel"*); *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326–27 (Tex.1993); *Caterpillar,* 881 S.W.2d at 939 (G. Hinojosa, J., concurring and dissenting).

#### 1. T.M.E.

Applying analysis under *Moriel* and *Wal–Mart* to the conduct of T.M.E., we must examine evidence regarding T.M.E.'s construction, redesign, and maintenance of the Executive Health Spa pool. As discussed above, we must affirm the directed verdict

unless Cecil raised evidence on both the objective and subjective components of gross negligence.

■ The objective prong of the two-part test concerns both the likelihood and the magnitude of the potential harm. *Moriel,* 879 S.W.2d at 22. Evidence of any risk created by a defendant's carelessness may serve as the basis of an ordinary negligence claim, but such evidence by itself is no evidence of gross negligence. *Wal–Mart,* 868 S.W.2d at 327. To show the objective component of gross negligence, the plaintiff must adduce further evidence that the risk was neither remote nor likely to involve only a minor injury. *See Moriel,* 879 S.W.2d at 22; *Wal–Mart,* 868 S.W.2d at 327.

■ As evidence of T.M.E.'s gross negligence, Cecil should have been able to rely on the improperly excluded deposition testimony of Rodney Hamlin. Discussing the risk inherent in a pool edge that is not flush with the surrounding deck of the pool, Rodney Hamlin explained that Hamlin Company had "never installed stone like that." Rodney Hamlin also testified that Hamlin Company clients would choose not to create such a condition after the safety problems caused by an uneven pool edge were explained to them.

The decisiveness of Hamlin Company's policy to avoid the creation of an uneven surface implies that the potential danger inherent in such a surface involves a considerable risk. When viewed in a light favorable to Cecil's claim, Rodney Hamlin's testimony is some evidence that the hazard created by T.M.E.'s installation of the stones was not merely a remote risk.

Cecil presents less direct evidence regarding the potential severity of the type of injuries that would be likely to result from T.M.E.'s installation and maintenance of the pool edge. In *Wal–Mart,* the supreme court considered the likely severity of injuries that were apt to result from a ridge in the pavement that had caused the plaintiff to trip. *Wal–Mart,* 868 S.W.2d at 327. As in the instant case, the plaintiff in *Wal–Mart* was an older Texan who broke her hip when she fell. *Id.* at 323.

As evidence of gross negligence, the *Wal–Mart* plaintiff relied chiefly on various complaints that Wal–Mart had received regarding the ridge. Because these complaints concerned items that had been jostled from shopping carts, the *Wal–Mart* court characterized the likely result of Wal–Mart's negligent failure to repair the ridge as minor harm. *Id.* at 327. The *Wal–Mart* court discounted the seriousness of the plaintiff's injury because her accident was merely a conceivable consequence of the risk rather than a likely result of Wal–Mart's negligence. *Id.*

As compared to the ridge that was the underlying danger in *Wal–Mart,* the edge of the Executive Health Spa pool presents a greater danger. Although the element of an uneven surface is common in both *Wal–Mart* and the instant case, the situation under review involves the likely accumulation of water as an aggravating factor. In addition to the accumulation of water, the risk of a slip is exacerbated by the probability that persons using a swimming pool will be barefoot. Moreover, the medical expert testimony presented at trial suggested that Cecil's injury was a typical result of a slip rather than merely a stumbling fall. *Cf. Id.* (the supreme court discounted evidence that someone had previously tripped over the ridge by noting that only this person "had as much as stumbled").

Each of these factors must be considered from the perspective most favorable to Cecil's gross negligence claim. *Cf. Moriel,* 879 S.W.2d at 24 (similarly reviewing evidence of gross negligence under the "no evidence" standard); *Wal–Mart,* 868 S.W.2d at 326–27 (discussing "no evidence" review of gross negligence award in context of evidence showing only ordinary negligence). Viewed in this light, Cecil has presented some evidence that the injury most likely to result from T.M.E.'s installation of the stones was not merely a minor injury.

By presenting some evidence that the risk of harm was not remote and that the likely consequential injury would not be minor, Cecil has avoided a directed verdict on the objective prong of the *Moriel* test. *Compare Moriel,* 879 S.W.2d at 22 ("[T]he 'extreme

risk' prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather the 'likelihood of serious injury' to the plaintiff.") *with White,* 651 S.W.2d at 262 (After considering "the evidence in the light most favorable to the party" appealing the directed verdict, if we find "any conflicting evidence of probative nature in the record, a determination of the issue is for the jury."). *See also Wal–Mart,* 868 S.W.2d at 327 (discussing how evidence of gross negligence must differ from evidence of ordinary negligence). Accordingly, we must focus on the subjective prong of the test, which requires evidence of T.M.E.'s awareness of, or indifference to, an extreme risk caused by its operation of the pool facility.

Cecil thoroughly questioned Ernest Tuchscherer regarding his perception of the risks inherent in the design of the pool, but Tuchscherer repeatedly denied the existence of any such danger. Furthermore, Cecil has presented no independent evidence that T.M.E. was consciously indifferent to the safety of the pool. Tuchscherer specifically testified that one of his main reasons for installing the coping stones was because he thought that they were safer than the original tiles around the rim of the pool.

Because the record contains no evidence on the subjective prong of the *Moriel* test, we must overrule Cecil's challenge to the trial court's disposition of her claim for gross negligence. Earlier caselaw allowed the jury greater latitude to infer the want of care from the defendant's conduct, but *Moriel* requires more explicit "proof that the defendant had actual subjective knowledge of an extreme risk of serious harm." *Moriel,* 879 S.W.2d at 22; *compare Id. with Clifton v. Southern Pac. Transp. Co.,* 709 S.W.2d 636, 640 (Tex.1986) ("Considering all actions or circumstances indicating a state of mind *amounting to* conscious indifference to the rights of others, a plaintiff may *objectively* prove a defendant's gross negligence by proving that, under the surrounding circumstances, a reasonable person *would have realized* that his conduct created an extreme degree of risk....") (emphasis added) *and Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 573 (Tex.1985) ("A plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. *In addition,* a plaintiff may *objectively* prove a defendant's gross negligence by proving that under the surrounding circumstances a reasonable person *would have realized* that his conduct created an extreme degree of risk....") (emphasis added).

## 2. Hamlin Company

Applying this analysis to Cecil's claims against Hamlin Company, the conduct that we must examine involves the sale of coping stones and the putative participation in the installation of the stones.

First, as part of our review of the directed verdict on Cecil's marketing-defect claim, we discussed the evidence of Hamlin Company's conduct regarding the sale of coping stones. For the same reasons that this conduct did not subject Hamlin Company to strict liability, we must also conclude that Cecil's evidence does not support a finding of gross negligence. Ultimately, Cecil has failed to show any culpability in Hamlin Company's sale of the coping stones without including a warning. This conduct is unlikely to have caused serious injury and cannot, therefore, underlie a gross negligence claim.

Second, we considered Hamlin Company's role in the installation of the coping stones as part of our review of the directed verdict based on the defective redesign of the pool. After noting that this action did not lie in strict liability, as Cecil argued, we found no evidence of Hamlin Company's negligent participation in the installation of the coping stones. As a result, Hamlin Company's alleged participation in the redesign of the Executive Health Spa pool cannot serve as the basis for Cecil's claim for gross negligence.

Cecil adduced no evidence that either Hamlin Company's sale of unlabeled coping stones or its participation in the redesign of the Executive Health Spa pool was likely to have caused a serious injury. Accordingly, we must affirm the trial court's directed ver-

dict on Cecil's gross negligence claim against Hamlin Company.

## VIII. SUBMISSION OF ISSUES

In her ninth point, Cecil maintains that the court erred by refusing to submit requested issues. If the error was preserved, we cannot affirm a judgment when the trial court has failed to submit a properly requested issue on a valid theory of recovery that was pleaded and supported by evidence. Tex. R.Civ.P. 277, 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243–44 (Tex.1992); *Exxon v. Perez*, 842 S.W.2d 629, 631 (Tex.1992) (per curiam); *Texas Constr. Serv. Co. v. Allen*, 635 S.W.2d 810, 814 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). The two issues that the trial court refused to submit involved Cecil's marketing-defect theory and Cecil's claim against Hamlin Company for a breach of warranty.

### A. MARKETING DEFECT

As we concluded in the foregoing discussion of the directed verdict on Cecil's marketing-defect claim, Cecil presented no evidence that the coping stones were unreasonably dangerous. Accordingly, Cecil was not entitled to the submission of her theory of recovery based on a marketing defect. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983) (discussing the court's duty when a requested issue is unsupported by evidence); *Wright Way Constr. v. Harlingen Mall Co.*, 799 S.W.2d 415, 422 (Tex.App.—Corpus Christi 1990, writ denied) (trial court need not submit an issue supported by no more than a scintilla of evidence).

### B. BREACH OF THE IMPLIED WARRANTY OF FITNESS

The second omitted jury question involved Cecil's contention that Hamlin Company's coping stones were not suitable as a safe border around the rim of the Executive Health Spa pool. Cecil pursued this theory of recovery under the Deceptive Trade Practices—Consumer Protection Act. Tex.Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon 1987).

To establish her right to the submission of this issue, Cecil would need to present some evidence on each of the following six elements: (1) her status as a consumer in terms of her purchase of the right to use the Executive Health Spa pool, (2) her use of the pool as the basis of her complaint, (3) the unsuitability of Hamlin Company's coping stones as a safe border around the pool, (4) the reason why Hamlin Company should have known that T.M.E. was purchasing the coping stones to use as a safe border around the pool, (5) the reason why Hamlin Company should have known that T.M.E. was relying on Hamlin Company's skill and judgment to select the coping stones, and (6) Hamlin Company's sale of the coping stones under these circumstances as the producing cause of Cecil's injury. *See Id.* § 17.45(4) (defining consumer); *Id.* § 17.50(a)(2) (discussing recovery under DTPA for breach of an implied warranty); *Id.* § 2.315 (Tex. UCC) (Vernon 1994) (discussing breach of an implied warranty of fitness for a particular purpose); *see also Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981) (discussing consumer's necessary relationship to a transaction to maintain a DTPA suit); *accord Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 885 S.W.2d 603, 623–29, 637 (Tex. App.—Beaumont 1994, n.w.h.) (discussing similar implied warranty claim under Minnesota law); *EMW Mfg. Co. v. Lemons*, 741 S.W.2d 212, 220–21 (Tex.App.—Fort Worth 1987), *rev'd on other grounds per curiam*, 747 S.W.2d 372 (Tex.1988) (comparing breach of express warranty with breach of implied warranty).

Cecil presented no evidence on the most critical element of this cause; she made no effort to show that the coping stones were unsuitable as a safe border around the Executive Health Spa pool. Accordingly, the trial court did not err by refusing to submit Cecil's proposed jury question. *Kindred*, 650 S.W.2d at 63; *Wright Way Constr.*, 799 S.W.2d at 422.

## IX. APPORTIONMENT OF PEREMPTORY CHALLENGES

In her final point of error, Cecil complains that the trial court erred by refusing to equalize jury strikes while also allowing the

appellees to coordinate their jury selection efforts. *See* Tex.R.Civ.P. 233 (addressing allocation of peremptory challenges in multi-party litigation). Appellees do not contest that they collaborated in exercising their twelve combined strikes. Rather, appellees argue that there was sufficient antagonism among the defendant-appellees to justify the trial court's action as a valid exercise of the court's discretion.

 The existence of antagonism between aligned parties is a question of law to be determined by the court. *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 736 (Tex.1986); *Texas Commerce Bank v. Lebco Constructors,* 865 S.W.2d 68, 77 (Tex.App.—Corpus Christi 1993, writ denied); *Diamond Shamrock Corp. v. Wendt,* 718 S.W.2d 766, 768 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). In making this determination, the trial court must consider the parties' pleadings as well as any information brought to the attention of the court through pretrial discovery, voir dire, or by other means. *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 5 (Tex.1986); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 919 (Tex.1979); *American Cyanamid Co. v. Frankson,* 732 S.W.2d 648, 652 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.).

 Appellees note that defendant Hamlin and defendant T.M.E. asserted cross-claims against one another, each arguing that the other was the sole cause of Cecil's injuries. Appellees contend that this establishes antagonism as a matter of law, citing *Patterson Dental, Shell Chemical Co. v. Lamb,* 493 S.W.2d 742 (Tex.1973), and *Tamburello v. Welch,* 392 S.W.2d 114 (Tex.1965). We disagree with this contention, although we recognize that the cases cited suggest that antagonism lies in the allegation of another defendant's sole causation of the plaintiff's harms. Nonetheless, the trial court must consider all the information brought to its attention and make the antagonism determination within this broader context. *Garcia,* 704 S.W.2d at 736–37.

 Because Cecil has not included a transcript of the voir dire as part of the statement of facts, however, we are unable to complete our review of the trial court's determination. But even more significantly, we cannot determine whether Cecil preserved the error, if any, in the allocation of peremptory challenges. *See Texas Commerce Bank,* 865 S.W.2d at 77 (to preserve error in the allocation of jury strikes, party must object after voir dire but before the exercise of the strikes). Accordingly, we must overrule Cecil's final point of error.

## X. CONCLUSION

Having considered each of Cecil's ten points of error, we affirm the trial court's judgment in favor of Hamlin Company. Regarding Cecil's causes of action against T.M.E., however, we affirm the directed verdict on Cecil's gross-negligence claim but otherwise reverse the judgment and remand for a new trial.