**Rowena RODRIGUEZ by and through her next friend Andrea RODRIGUEZ, Appellant,**

v.

**HYUNDAI MOTOR COMPANY, Hyundai Motor America, Port City Pontiac–GMC Trucks, Inc., d/b/a Harbor Hyundai, Appellees.**

No. 13–94–573–CV.

Court of Appeals of Texas, Corpus Christi.

April 30, 1997.

Rehearing Overruled May 29, 1997.

**760**

Baldemar Gutierrez, David O. Gonzalez, Law Offices of Baldemar Gutierrez, Alice, Ramon Garcia, Edinburg, for appellant.

Ruth G. Malinas, David M. Prichard, Ray A. Weed, Ball & Weed. San Antonio. Jose E. Garcia, McAllen, for appellees.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

**OPINION**

YAÑEZ, Justice.

This case involves personal injuries sustained because of an allegedly defective automobile. Appellant, Rowena Rodriguez, by and through her next friend Andrea Rodriguez, brings this appeal from a take-nothing judgment rendered by the jury in her lawsuit against Hyundai Motor Company, Hyundai Motor America, Inc., and Port City Pontiac–GMC Trucks, Inc. (hereinafter "appellees"). Appellant was injured on January 27, 1990 near Sarita, Texas when the Hyundai vehicle in which she was a passenger[1] was involved in a serious roll-over accident. Rodriguez sued appellees under theories of negligence, breach of warranty, and strict liability after she suffered serious injuries in the accident. We affirm in part, and reverse and remand in part.

Appellant's contention at trial was that her injuries were caused by a design defect in the 1988 Hyundai Excel–GL vehicle. Expert testimony suggested that the accident was caused by driver inattention and an over-correction of the steering wheel, which caused the vehicle to flip and roll over two and a half times. Appellant did not allege that any defect in the automobile caused the accident. Rather, she contended that the roof structure and the restraint systems were deficiently designed, and as a result of the noncrashworthiness of the vehicle, she sustained more serious injuries than she would otherwise have had. Appellees defense was that the design of the vehicle was not defective and was not the cause of her injuries. They maintained that it was the negligence of the driver of the vehicle, Belarmino Cruz, which was the sole cause of her injuries. A central issue in the trial was whether her injuries were caused by structural damage to the vehicle sustained despite wearing her seat-belt, or whether appellant was even wearing a seat-belt at all.

By ten points of error, appellant contends that the judgment entered by the court

1. Belarmino Cruz was driving the automobile, and was also sued by appellant. Although Cruz maintained that appellant was the driver, both sides concede for purposes of this litigation, that she was the passenger, not the driver.

should be reversed. In points one and two, appellant complains of error in allowing a defense expert witness to testify at trial, and the court's refusal to grant a new trial based on the erroneous allowance of the expert testimony. By points three and four, appellant complains of evidentiary rulings which limited the extent of her expert testimony. By points five through seven, appellant contends that the court committed reversible error in refusing to submit her proposed special issues regarding design defects, marketing defects, and breach of implied warranty, respectively. In points eight and nine, appellant contends that the court erred in submitting to the jury the question of appellant's possible negligence, and that the jury's findings that she was negligent are against the great weight and preponderance of the evidence. Finally, appellant argues that the court erred in overruling her motion for new trial based on defense counsel's inappropriate comments at trial.

The appellate record for the case consists of fourteen volumes of exhibits and fourteen volumes of testimony, plus a three-volume transcript. The jury heard ten days of testimony before entering its take-nothing findings. The parties conducted extensive discovery prior to the trial. The actions of the appellees during pretrial discovery form part of the basis of this appeal.

Points one and two contend that the trial court should not have allowed appellees' expert witness Lee Carr to testify at trial because appellees were not forthcoming with information regarding his identity, the nature of his testimony, and his files during discovery. In particular, appellant argues that the appellees' refusal to timely and completely respond to interrogatories and requests for production of materials relied on by their experts constituted a discovery abuse. As such, appellant contends, the trial court should have penalized them by preventing Carr from testifying. Appellees respond by asserting that they did not violate any discovery duty, and that even if they did, the court had good cause to allow Carr's testimony.

## THE DISCOVERY FACTS

Appellant's argument is rooted in two discovery requests sent to each of the appellees in September 1993: (1) interrogatories seeking the names, addresses, and fields of expertise of the experts whom appellees expected to testify, as well as "all facts known to the expert that form the basis of the expert's mental impressions and opinions," and "information regarding all documents," and (2) a request for production of "all documents and tangible things" used by, prepared by, or prepared for appellees' experts in anticipation of litigation. In their first timely answers to appellant's discovery, each of the appellees responded that they had not yet designated experts, and objected to the interrogatories as burdensome, overbroad, harassing, and oppressive.[2] Appellees also objected to parts of the requests for production, but stated their intention to make expert files available for inspection at a later date.[3] Each response recited the appellee's intention to follow any docket control order or agreement between the parties.

On October 25, 1993, the court signed an agreed docket control order wherein the defendants agreed to designate any and all expert witnesses by "name, address, telephone number and area of expertise" by

2. The full response to Interrogatory 20 was as follows:

A determination as to expert witnesses whom defendant may call at the time of trial has not been made at this time. Defendant will supplement its response in accordance with the Texas Rules of Civil Procedure or an applicable docket control order. Defendant objects to this interrogatory insofar as it seeks the identity of expert witnesses whom the defendant expects to testify at the time of trial. Defendant further objects to items "b." and "c." of this interrogatory on the grounds that it is overbroad, burdensome, harassing and oppres-

sive for defendant to enumerate this information in an interrogatory response. Defendant will provide its designated expert witnesses for deposition through which counsel for plaintiff may obtain this information.

3. Each appellee stated that it would "provide its designated expert witness for deposition at which time copies of its experts' file materials may be obtained by counsel for plaintiff. Defendant objects ... to the extent that it requests the production of expert reports. Defendant will produce expert reports upon order of the court or by agreement of counsel."

January 3, 1994. All discovery was to be completed by March 15, 1994. At that time, the trial was scheduled to commence on April 18, 1994. The docket control order also contained a proviso that the parties could alter or modify its terms, though it did not expressly say how such modifications were to be made.

On January 3, 1994, defendants timely designated their experts, including Carr, and stated that his area of expertise was "the design of the 1988 Hyundai Excel, vehicle performance, deformation analysis and the overall crashworthiness of the subject vehicle." Later, they provided their first supplement to the interrogatories, again naming Carr as an expert witness, stating the same subject matter of his testimony. On April 21, 1994, more than thirty days before the revised date of the trial,[4] Hyundai supplemented its interrogatory answer with respect to Carr, adding the following language:

> So there is no misunderstanding, his opinions include, but are not limited to, the crashworthy analysis of the subject vehicle, including an evaluation of the restraint system, whether the occupants were restrained at the time of the subject accident, and any issue that may affect the restraint systems involved in the subject Hyundai vehicle. Mr. Carr will also give testimony rebutting the opinions provided by Dr. Sances, Mr. Stilson and the plaintiff's other expert liability witnesses.

Apparently, the parties modified the docket control order by agreeing to depose each others' experts at a date prior to trial.[5] Appellees contend that appellant had agreed on March 28, 1994 to reschedule Carr's deposition for May 2, 1994, a date which was less than thirty days before the trial. Appellees stated that they would make Carr's files available for review at the time of the deposition. For unexplained reasons, Carr's deposition was again rescheduled for May 9, 1994.

On the morning of May 9, 1994, plaintiff filed a motion to exclude the testimony of Carr and others as a sanction for discovery abuses because the defendants had failed to timely supplement their discovery responses more than thirty days before trial. Although appellees timely identified their experts and made them available for deposition, they never provided the requested documents or information in response to plaintiff's interrogatories and requests for production. At the pretrial hearing on the motion that same morning, appellant argued that, despite the appellees' objections to the interrogatories and requests for production, they went ahead and attempted to answer the questions, and thereby waived any objections to them. The trial judge denied the motion and refused to exclude the expert's testimony. Appellant repeated her objections to Carr's testimony at trial, and thereby preserved this issue on appeal. *See Clark v. Trailways, Inc.,* 774 S.W.2d 644, 647 (Tex.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990).

Appellant makes the same argument on appeal which she argued prior to and during trial. She contends that the trial court failed to exclude Carr's testimony as a mandatory sanction under the Texas Rules of Civil Procedure, and that its failure to do so was reversible error.

## DISCUSSION

■ Appellant's motion to the court was premised on the application of two procedural rules, Rule 166b(6) and Rule 215(5), to the parties' discovery dispute. Rule 166b(6)(a) requires a party to supplement his answers to discovery requests if "he knows the response was incorrect or incomplete when made" or he knows that it was correct when made, but is no longer true and complete and therefore is misleading. Tex.R. Civ. P. 166b(6)(a). Rule 166b(6) requires a party to disclose any *previously undisclosed* expert witness who the party expects to call as a

---

4. In response to a motion for continuance filed by the appellees, the court moved the trial date from April 18 to May 23, 1994.

5. Appellees assert in their brief that they were unable to depose appellant's expert John Stilson until March 15, 1994. The record contains four deposition notices for Stilson, dating from January through March, 1994. Appellant agreed to depose Carr, whose testimony derived in part upon Stilson's analysis, in May, the same month of the trial.

witness by including his "name, address and telephone number ... and the substance of the testimony concerning which the expert witness is expected to testify" no less than thirty days prior to the beginning of trial. TEX.R. CIV. P. 166b(6). Separate and distinct from this rule is Rule 215(5), which states that

> [a] party who fails to *respond to* or *supplement* his response to a request for discovery shall not be entitled to present the evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX.R. CIV. P. 215(5) (emphasis added). The application of the rule in appropriate circumstances is mandatory, and the trial court does not have discretion in imposing its sanctions should it find that a party has abused the discovery process. *Alvarado v. Farah Manufacturing Co., Inc.*, 830 S.W.2d 911, 914–17 (Tex.1992).

## INTERROGATORIES

■ With regard to the interrogatories, appellees objected to their form, as was their right under Texas Rule of Civil Procedure 168(6), and in so doing deferred any obligation to answer the objected-to portion of the interrogatory. *Service Lloyds Ins. Co. v. Harbison*, 826 S.W.2d 930, 931 (Tex.1991) (such objection defers all requirements for answering interrogatories until the date the trial court rules on the objections and directs the parties to answer). Appellant never sought or obtained a ruling on the appellees' objections to the interrogatories.

■ Appellant contends that the appellees opted to answer the interrogatories by supplementing their responses when they designated their witnesses. By so doing,

appellant contends that appellees waived any objections to the interrogatories and assumed a duty to answer them completely. We disagree with this characterization of appellees' supplemental responses. Appellees objected to the portions of the interrogatories which asked them to enumerate all the facts, mental impressions, and "information regarding all documents" of their experts, on the grounds that such interrogatories were burdensome, harassing, and oppressive. They never undertook to respond to the objected portions by way of any supplementary responses, and thus did not waive those objections. Their designation of experts and their areas of expertise was done in response to the docket control order, and does not contradict their initial objections.[6]

If appellant disapproved of any aspect of the appellees' responses, she could have objected in writing, and thereby sought relief under rule 166b. *See* TEX.R. CIV. P. 167(3). She did not. Instead, appellant requested the court to completely exclude Carr as a witness under Rule 215(5). Appellees fully complied with the agreed docket control order by timely designating Carr as an expert witness, and by supplementing their response with regard to the substance of his testimony within time allotted, more than thirty days before trial. Their responses satisfied the name, address, and telephone requirement of Rule 166(b)(6), the purpose of which is to allow the opposing party to easily locate, interview, and depose the proposed witness. *$23,900 v. State*, 899 S.W.2d 314, 317 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Varner v. Howe*, 860 S.W.2d 458, 464 (Tex.App.—El Paso 1993). Carr was made available for deposition at a time and place agreed upon by the parties.

Because appellees provided all the information required under both the docket control order and Rule 166b(6)(b), any sanction premised on the interrogatory responses was unwarranted.

---

**6.** Moreover, the supreme court has implied that any duty to respond to interrogatories ceases if they are objected to and the court issues an agreed order modifying discovery requirements pursuant to interrogatories. *Cf. Kawasaki Motors Corp. v. Thompson*, 872 S.W.2d 221, 224 (Tex.1994).

## REQUESTS FOR PRODUCTION

Rule 167(1)(d) requires a party served with a request for production to serve a written response in which the party either (1) objects to the request, stating specific reasons, and/or (2) states, with respect to each item or category of items, "that inspection or other requested action will be permitted *as requested*, and he shall thereafter comply with the request...." Tex.R. Civ. P. 167(1)(d) (emphasis ours). While the response to the request must be filed within thirty days of the request, the actual production of the documents is satisfied if it is done in accordance with the terms of the request, but no later than the thirtieth day before trial. Tex.R. Civ. P. 167(2) & 166b(6).

The record does not contain the original requests for production, and therefore we cannot ascertain the "time, place, and manner" in which the production was to be had. While the responses objected to the production of expert reports, and thereby assuaged any duty to produce those documents generated by Carr, appellees stated that they would make expert files available when each expert was deposed. The responses complied with Rule 167(1)(d) to the extent that the defendants agreed to provide Carr's files to opposing counsel at his deposition.

As we noted above, we cannot ascertain whether the time, place, and manner of production provided for in the response corresponded to the time, place, and manner "as requested," due to the absence of the request itself from the record. Such response has been deemed valid in instances when the producing party objected to the production of documents because they were too voluminous to produce, or when production would diminish the availability of files for other litigants also seeking them. *See Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755 (Tex.App.—Dallas 1991, writ denied), *cert. denied*, 506 U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992). However, it has also been held that such an "offer" to allow the inspection of the documents, absent any objections regarding production, does not constitute a response at all. *Overall v. Southwestern Bell Yellow Pages, Inc.*, 869 S.W.2d 629, 631 (Tex.App.—Houston [14th Dist.] 1994, no writ). In *Overall*, the court held that a party who responded to a request for production by stating that the documents were available for inspection at their attorney's office was not a valid response. In distinguishing its facts from those in *Steenbergen*, the *Overall* court noted that the documents requested in their case numbered only three, whereas the responding party in *Steenbergen* had sought a protective order for the 100,000 documents which were requested, and made available for inspection at its "reading room." *Id.*

In the instant case, appellees neither objected to the request as being unduly burdensome, nor did they seek a protective order from the court. Therefore, it is also distinguishable from a *Steenbergen* scenario. If we consider their response to the request as "nonresponsive," we must find it to be an invalid response. Under this construction, appellees' actions should not be construed as a failure to supplement their discovery responses under Rule 168, but rather as a complete failure to respond until the documents were produced at Carr's deposition. Under either circumstance, however, Rule 215(5) mandates the exclusion of Carr's files and any testimony related to it, unless good cause was shown why such sanction should not be imposed.

■ The determination of whether the offering party has met its burden of showing good cause to admit the testimony lies within the sound discretion of the trial court. *Alvarado*, 830 S.W.2d at 914. Its determination can be set aside only if it is determined that the court abused its discretion. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986). This exception allows courts latitude to permit testimony in those situations where it might be warranted, given the parties' conduct throughout discovery. *See Medical Protective Co. v. Glanz*, 721 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1986, writ ref'd) (court is entitled to consider other matters during course of litigation when deciding upon sanctions).

■ A number of factors in the good cause determination have been articulated, including: (1) inadvertence of counsel, (2) lack of surprise, unfairness, or ambush, (3) unique-

ness of excluded evidence, and (4) the fact that a witness has been deposed. *See Alvarado*, 830 S.W.2d at 915; *Henry S. Miller v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992); *Patton v. St. Joseph's Hosp.*, 887 S.W.2d 233, 239 (Tex.App.—Fort Worth 1994, writ denied); *Klekar v. Southern Pac. Transp. Co.*, 874 S.W.2d 818, 825 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Another factor which has been considered is the amount of time which an expert had to prepare a report or form an opinion before the trial. *Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 627–28 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Although no single factor alone constitutes good cause, some combination of factors may supply the trial court with good cause to admit the testimony or evidence. *Patton*, 887 S.W.2d at 239–40.

■ At the pretrial hearing on the plaintiff's motion to exclude, counsel for the defense offered several grounds for why Carr should be allowed to testify. Counsel noted that Carr had been timely designated, and the substance of his testimony had been provided to opposing counsel, and therefore there was no surprise regarding the nature of his proposed testimony. Defense counsel also pointed out that Rodriguez had never objected to their response to the request for production, and had never attempted to compel the production of the documents prior to the day of the hearing. He also stated that the parties had agreed that their experts would not have to make reports. Finally, the court learned through plaintiff's counsel that he had already reviewed Carr's files at his office at some point prior to the date of the deposition, although that date was not provided to the court.

As we discussed above, the record reflects that Carr had been disclosed as a witness months before the trial. In their supplemental response, provided April 21, 1994, appellees invited opposing counsel to inspect their expert files at a mutually agreeable time and place. In that response Hyundai Motor Company wrote,

The file materials of defendant's expert witnesses can be viewed by plaintiff's counsel for inspection, by appointment, during regular business hours, upon reasonable notice at a mutually agreeable location. Alternatively, the entire files either have been or will be produced at the time of the expert's depositions. If counsel for plaintiff is interested in reviewing the expert's files prior to the depositions, counsel may contact [counsel for defendants] to arrange for such inspection at a mutually agreeable time.

Although Carr's files were not technically "produced" more than thirty days before the trial, it cannot be said that the defense was engaged in trial by ambush by hiding Carr's files. To the contrary, in their response to the request, which appellees filed in October of 1993, some six months before the trial, they stated their intention to produce the files when the expert was deposed. In fact, appellees suggested that they would provide the expert reports "upon order of the court or by agreement of the parties." Appellant never objected to these responses.[7] Appellant waited until May 9, 1994, two weeks before trial, to raise any issue regarding the failure to produce the documents. Essentially, appellant "hid behind the log" until the day of the scheduled deposition before it apprised the court of any problem regarding the documents.

We conclude that the trial court's implicit finding of good cause should not be construed as an abuse of discretion, as it appears that the court properly considered the entire discovery history between the parties before it determined that Carr's testimony should not be entirely excluded. Appellees presented sufficient grounds to allow the court to find that there was good cause to allow Carr's testimony. Points one and two are overruled.

### EXCLUSION OF 'DEMONSTRATIVE' EVIDENCE

■ In her third point, appellant contends that the trial court erred in refusing to allow

---

7. We note that appellant could have filed a motion to compel the production if she objected to the response. Although such motion is not a prerequisite to the imposition of Rule 215 sanc- tions, we do consider it to be a valid consideration for the trial judge in determining good cause.

her to either present expert testimony or present videotape of a "drop test" of another similar vehicle to demonstrate roof strength. Appellees had objected to both the introduction of the videotape and any testimony relating to it on the grounds that it was dissimilar to the case at bar and highly prejudicial. After hearing argument of counsel on this point outside the jury's presence, the trial court sustained appellees' objections and excluded this evidence.

A trial court should admit evidence of an out-of-court experiment only when there is substantial similarity between conditions existing at the time of the occurrence giving rise to the litigation and the conditions created by the experiment. *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 590 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279, 281–82 (Tex.1964). The conditions do not have to be identical. *Nowak*, 638 S.W.2d at 590; *Miles v. Ford Motor Co.*, 922 S.W.2d 572 (Tex.App.—Texarkana 1996, writ granted), (citing *Garza v. Cole*, 753 S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e)). When there is a dissimilarity in the conditions, the admission of the experiment is within the trial court's discretion if the differences are minor or subject to explanation. *Id.* (citing *Lopez v. Foremost Paving, Inc.*, 796 S.W.2d 473, 480–81 (Tex.App.—San Antonio 1990, writ dism'd)). The trial court's decision on the admissibility of the evidence will not be reversed absent an abuse of discretion. *Garza*, 753 S.W.2d at 247.

At trial, appellant attempted to call as one of its experts Robert Hooker, who had performed a drop test on a similar Hyundai vehicle to measure "roof crush." The drop test involved lifting the subject vehicle, turning it over so that it was inverted twelve inches above ground, then dropping it onto a concrete surface. Hooker would then exact measurements of the vehicle to determine the impact of the drop.

Appellant did not contend that the test was performed under similar circumstances as in the accident at issue. Appellees cited numerous differences between the test vehicle and the accident at issue, including the speeds and rolls of the two cars, the different surfaces involved, and the different damage sustained by the vehicles. Moreover, Hooker admitted that there was no "pass-fail" criteria to the test, but that he simply noted differing degrees of "crush" on the vehicles on which he had performed the test. Finally, appellees explained to the court that the organization which had developed the test, the Society of Automotive Engineers, had abandoned the test because it was unreliable towards approximating injuries and structural damages resulting from real-world accidents.

Hooker explained to the court at the hearing that his testimony would consist solely of an explanation of the test he performed. He admitted that he could not state what a passing performance would be for the test. Hooker stated that he had no knowledge or opinion about how the accident in question occurred, and would not offer any comparisons between the test and the accident. In fact, it is doubtful that he could offer any expertise regarding the vehicle's structural design, as he testified that he was neither an engineer nor a college graduate and had never been employed as a structural consultant by any car company.

The court ruled that the test was "completely dissimilar" to the accident, and excluded the videotapes as well as Hooker's testimony. We concur with the court's ruling. Given the obvious discrepancies between the test and the accident, it was soundly within the court's discretion to exclude this evidence. If admitted, there was a high possibility that the jury could have been misled and prejudiced by a belief that the performance of the vehicle in the test bore any substantial relationship to the events of the accident. Although the appellant's suit was premised in part on the faulty design of the Hyundai's roof as the cause of her injuries, the court was correct in excluding evidence of a test which has been deemed by the very entity that propagated it to be unreliable. Point three is overruled.

By point four, appellant contends that the court committed reversible error by refusing to allow plaintiff's counsel to present

as demonstrative evidence before the jury a portion of the actual roof removed from the vehicle. Appellant suggests that it was vital to her presentation of the issues to be able to physically show the roof to the jury.

In order to preserve error regarding the exclusion of evidence, both the offer of the evidence and the adverse ruling must appear in the record. TEX.R.APP.P. 52. The substance of the excluded evidence must be made known to the court by an offer explaining its substance as soon as practical, but before the court's charge is read to the jury. TEX.R. CIV. EVID. 103.[8]

We have reviewed the record and cannot find where the complained of evidence was actually offered and/or excluded by the court. The offer is not contained in the portion of the record cited by the appellant regarding the expert testimony relating to the alleged flaws in its design. The statement of facts does reflect that "an off-the-record discussion at the bench" was held, but it is neither preceded by an offer of this evidence or objection thereto, nor is it followed by any ruling.[9] There is no ruling from the court specifically addressing this issue in the record. In fact, the only reference to this issue in the record is appellant's assertion in their motion for new trial. Thus, we find that appellant has not preserved any alleged error for review, and we overrule point of error four.

## ERROR IN THE COURT'S CHARGE

Points five, six, and seven complain of the trial court's refusal to submit questions on appellant's marketing defect and breach of implied warranty claims. The argument and authorities for all three points are grouped together. Point six concerns the trial court's refusal to submit a question on a marketing defect. By reviewing the transcript, it appears that points five and seven concern questions which appellant requested on the appellees's alleged breach of implied warranties of merchantability and fitness for a particular purpose, respectively. Appellant contends that the trial court abused its discretion because there was evidence supporting each of these special grounds of recovery.

We review the court's charge under the abuse of discretion standard, where an abuse occurs if the trial court acts without reference to any guiding principles. *Texas Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). A party is entitled to the submission of jury issues when the pleadings and the evidence raise a fact issue, and it is error for the trial court to refuse to submit such an issue. TEX.R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985). To have a case reversed on jury charge error, harmful error must be shown. TEX.R.APP. P. 81(b)(1); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749– 50 (Tex.1980). In determining whether error in the charge is reversible, we consider the pleadings, the evidence, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

Before we address the questions which the court refused to submit, we will discuss the charge which was given so that the omitted questions may be put into context. Appellant sued appellees under strict liability, alleging that the Hyundai Excel was not crashworthy. She also included in her pleadings allegations that appellees were negligent in their design and testing of the vehicle, and that certain implied warranties

---

**8.** Rule 103(a) states "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... (2)[i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer." Subpart (b) of this rule states that "[t]he offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof." TEX.R. CIV. EVID. 103.

**9.** Prior to the discussion, appellants stated that they would offer Exhibit 281 at that time. In the preceding pages of the testimony, however, Exhibit 281 was identified as documents which had been requested and received from Hyundai containing drawings of the body structure, as well as sections from drawings depicting parts of the car. No other exhibit was mentioned. Contrary to appellant's implication, the court admitted Exhibit 281 into evidence.

were breached, namely, merchantability and fitness for particular purpose. The concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 (Tex.1979). Appellant did not contend that any defects in the car caused the accident, but rather that they caused her injuries. Thus, the rules of strict liability govern in this case. *Id.* The controlling question, for each of the questions submitted by appellant, was whether alleged defects in the automobile caused her injuries.

In question one, the trial court asked the jury to indicate whose negligence, if any, as between Hyundai Motor Company, Cruz, and Rodriguez, proximately caused the injury in question. The jury answered "Yes" to both Rodriguez and Cruz, and "No" to Hyundai.[10]

In Question No. 3, the court submitted the following strict liability question to the jury:

Was there a design defect in the 1988 Hyundai Excel at the time it left the possession of the Hyundai Motor Company that was a producing cause of the injury in question?

This question was followed by an instruction that a design defect is "a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." The jury answered the question in the negative.[11]

Questions four and five instructed the jury, if in fact they had found more than one of the parties caused the injuries, to allocate the percentage of injury caused by each of those parties.[12] In Question four, as between appellant and appellees, the jury found appellant 100 percent responsible, and appellees 0 percent responsible. In Question five, as between Cruz and Hyundai Motor Company, the jury found Cruz 100 percent responsible, and Hyundai 0 percent responsible.[13] The charge did not contain any questions pertaining to breach of implied warranties.

In her brief, appellant sets out the standard of review for error in the jury charge. It is followed by an explanation of the various evidence presented in support of her various claims: crash tests demonstrated inappropriate roof crush at 21 m.p.h., expert testimony that the roof and structure design and restraint system were inadequate, that

10. Question No. 1 read:

Did the negligence, if any, of those named below proximately cause the injury in question?
Answer "YES" or "NO" for each of the following:
A. HYUNDAI MOTOR COMPANY _____
B. BELARMINO CRUZ _____
C. ROWENA RODRIGUEZ _____

11. The court's charge followed the pattern jury charge provided in 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.05A (1994), which was expressly approved of by the supreme court in design defect cases. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984). The pattern charge recites the instruction previously approved of in *Turner*, wherein the supreme court declared this exact issue to be the prime requirement for imposing liability on a seller under the rule of strict liability. *Turner*, 584 S.W.2d at 848.

12. Question No. 4. read:

If, in answer to Question No. 1, or 3, you have found that more than one of the parties' acts, omissions, or products caused the injury, then answer the following question. Otherwise, do not answer the following questions.

The percentages you find must total 100 percent. The percentage of causation attributable to a person or product is not necessarily measured by the number of acts, omissions, or product defects found.
For each party found by you to have caused the injury, find the percentage caused by:
A. THE HYUNDAI AUTOMOBILE OR HYUNDAI MOTOR COMPANY _____
B. ROWENA RODRIGUEZ _____
TOTAL 100%

13. Question No. 5 read:

If in answer to question No. 1, you have found the acts, omissions, or products of more than one of those named below caused the injury, then answer the following question. Otherwise, do not answer the following question.
The percentages you find must total 100 percent. The percentage of causation attributable to a party or product is not necessarily measured by the number of acts, omissions, or product defects found.
With respect to causing or contributing to cause in any way the injury to Rowena Rodriguez, find the percentage of causation, if any, attributable as between—
A. HYUNDAI MOTOR COMPANY _____
B. BELARMINO CRUZ _____
TOTAL _____

the interior roof had insufficient padding, the vertical pillars were weak, and that additional protective measures could have been implemented into the design of the vehicle. In her "legal" argument, appellant somewhat confusingly states:

> Breach of warranty and marketing defects in automobiles means doing what an automotive company of ordinary prudence in the exercise of ordinary care would not have done under the same or similar circumstances or failing to do that which an automotive company of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances.

Appellant cites no authorities for this point of law. This summation appears to articulate a negligence standard, which would not be pertinent to their implied warranty theories. None of the authorities cited by appellant pertain to any of the three theories contained in the requested questions that form the basis of these points. However, by addressing the standard for the submission of issues, and by delineating the evidence offered at trial in support of the issues, appellant has provided enough to maintain these points. *See* Tex.R.App. p. 74(f).

## MARKETING DEFECT

■ Point six concerns a question and instruction on marketing defect which appellant submitted in the identical form as the pattern jury charge. *See* 3 State Bar of Texas, Texas Pattern Jury Charge PJC 71.06 (1994). A marketing defect involves the failure to warn, or warn adequately, of dangers or risks of harm in a product, or the failure to instruct, or adequately instruct a user on the safe use of a particular product. *Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 510 (Tex.App.—El Paso 1992, writ denied). In order to be entitled to submission of a question on marketing defect, a party must present evidence on the following elements of the cause:

> 1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; 2) the product supplier must actually know or reasonably foresee the risk of harm at the time the

product is marketed; 3) the product must possess a marketing defect; 4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and 5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*USX Corp. v. Salinas*, 818 S.W.2d 473, 482–83 (Tex.App.—San Antonio 1991, writ denied).

■ In the instant case, appellant presented no evidence of a causal nexus between the appellees' duty to warn and the injuries suffered. Appellant did present some evidence by way of her experts that the vehicle harbored certain defects which rendered it unreasonably dangerous in the circumstances of a rollover. If in fact the vehicle was defectively designed, it might be inferred that Hyundai had knowledge of these alleged defects while the product was being designed and marketed. However, appellant did not present any evidence which suggested that the results of the accident would have been avoided had appellees placed a warning sticker on the vehicle. Because there was no evidence presented that the failure to warn was a producing cause of the injuries, appellant was not entitled to the submission of this theory of recovery. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Cecil v. T.M.E. Investments, Inc.*, 893 S.W.2d 38, 54 (Tex.App.—Corpus Christi 1994, no writ). Point six is overruled.

## IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

Point seven concerns the failure of the court to submit a question of the implied warranty of fitness for a particular purpose. Section 2.315 of the Texas Business and Commerce Code states that such implied warranty exists

> where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.

Tex. Bus. & Com.Code Ann. § 2.315 (Vernon 1994). Comment 2 to this section states that a particular purpose differs from the ordinary purpose for which the goods are used, envisioning only a specific use by the buyer. *Id.* Comment 2; *Lanphier Constr. Co. v. Fowco Constr. Co.,* 523 S.W.2d 29, 41 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

■ In this instance, appellant did not allege that either her or Cruz's use of the Hyundai in question was anything other than an ordinary use; namely, as a passenger vehicle transporting two persons along a Texas highway. *See Miles,* 922 S.W.2d at 586–87 (use of vehicles to carry passengers is an ordinary, and not particular, purpose). Because there was no evidence of any "particular" use of this vehicle, such instruction was correctly denied by the trial court. Point seven is overruled.

## IMPLIED WARRANTY OF MERCHANTABILITY

■ Point five is predicated on the court's refusal to submit a question on an implied warranty of merchantability.[14] Such instruction is only applicable to cases brought under the Texas version of the Uniform Commercial Code. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442 (Tex.1989) (referring to statute located at Tex. Bus. & Comm.Code Ann. § 2.314 (Vernon 1994)). A plaintiff in an implied warranty of merchantability case must prove that the good complained of was defective at the time it left the manufacturer's or seller's possession. *Id.* at 444–45.

In her fourth amended petition, appellant broadly asserted that appellees "breached their implied warranties by placing the vehicle in question into the stream of commerce and onto the market when it was not fit for the ordinary purposes for which said vehicles are used and when it contained latent defects in its structural design." Having pled this

basis of recovery, appellant was required to prove that a defect existed in order to warrant a finding on this issue. *Hyundai Motor Co. v. Chandler,* 882 S.W.2d 606 (Tex.App.—Corpus Christi 1994, writ denied); *Crosbyton Seed Co. v. Mechura Farms,* 875 S.W.2d 353 (Tex.App.—Corpus Christi 1994, no writ). Appellant offered testimony regarding numerous alleged defects in the design of the vehicle in question: lack of adequate roof and body structure, inadequate restraint system, inadequate headroom, and failure to provide interior padding, among others. All of the defects alleged to have existed in the Hyundai pertain to its design, and therefore were in existence at the time it left the manufacturer's and seller's possession.

■ Based on the pleadings and the evidence presented at trial, we conclude that the trial court did not have discretion to refuse to submit a question on this theory. *See Elbaor,* 845 S.W.2d at 243–44. Appellee's contention that such exclusion was permitted under Texas Rule of Civil Procedure 278 is misguided, in our view. Rule 278 states that a judgment shall not be reversed for the failure to submit "various phases or different shades of the same question." Tex.R. Civ. P. 278. This rule, which coincides with the mandate of "broad submission" under Rule 277, pertains to the simplification of the charge on each ground of recovery. While it directs courts to simplify the charge on each particular ground, it does not permit the court to combine independent grounds of recovery into a single question.

■ Appellees also contend that a determination on the existence of a design defect under strict liability claim might also resolve a question on the existence of a defect on an implied warranty cause. *See Costilla v. Aluminum Co. of Am.,* 835 F.2d 578, 579 (5th Cir.1988). Therefore, they contend that the failure to submit both grounds is not necessarily error. We disagree. At the time the

14. Appellant requested that the following question and instruction be included in the charge:
[W]as the automobile supplied ... unfit for the ordinary purposes for which such automobiles are used because of a defect, and, if so, was such unfit condition a proximate cause of the injury in question?

It defined defect as "a condition of the goods that renders it unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy." This requested instruction tracks the language of the Pattern Jury Charge for breach of implied warranty of merchantability. Tex. Patt. J. Charge, PJC 71.08.

trial court was presented with the requested issues, it was obliged to submit each separate ground which had been pled and supported by some evidence. *Exxon v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). Although appellant's warranty theory was premised on the same assumption as the strict liability theory (*i.e.* a defect in the design of the subject vehicle), there are significant differences between the grounds which, under certain circumstances, might provide for different answers. Not only is the definition of "defect" different for each,[15] but the causation inquiry is different as well. Strict liability focuses only on direct causation, while the warranty theories focus on proximate causation. The argument made by appellant is proper under a harm analysis, and not toward our determination of whether an error occurred.

■ Having determined that the court erred when it refused to submit this issue, we now conduct harm analysis. The appellate rules state that error is reversible only when it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 81(b)(1). When the trial court refuses to submit a cause of action to the jury which a plaintiff has properly pleaded and presented evidence on, it effectively denies the party a jury trial on that issue, which results in the court making the decision as to whether the requesting party has proven his case by a preponderance of the evidence. Reviewing courts have considered the trial court's failure to submit a valid theory of recovery which is pleaded and supported by some evidence reversible error. *Elbaor*, 845 S.W.2d at 243–44 (trial court committed reversible error by refusing to submit to jury a question on the appellant's contributory negligence); *Exxon Corp.*, 842 S.W.2d at 631 (failure to submit defensive issue which would have insulated defendant from liability was reversible error); *Texas Constr. Serv.*

*Co. v. Allen*, 635 S.W.2d 810, 814 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). This Court has recently stated that, if the error was preserved, "we cannot affirm a judgement when the trial court has failed to submit a properly requested issue on a valid theory of recovery that was pleaded and supported by evidence." *Cecil*, 893 S.W.2d at 54 (citing TEX.R. CIV. P. 277 & 278 and several previous decisions).

■ We cannot easily dismiss the obligation of the trial court to submit all disputed issues to the trier of fact. To allow courts to refuse to submit viable issues would not only contradict a significant body of precedent which has held otherwise, but would also permit the trial court to exercise fact-finding powers which it does not have. Although there is a temptation to rationalize the court's refusal to submit appellant's breach of implied warranty of merchantability to the jury,[16] as the dissent has done, we will not proceed in that manner. Rather, we adhere to the well-reasoned rule that a judgment cannot stand when not all properly pleaded theories were submitted to the jury. The trial court's failure to instruct the jury on this theory was reversible error. Point five is sustained.

By points eight and nine, appellant complains about questions and findings relating to appellant's negligence. In point eight, appellant asserts that the trial court erred in submitting a "yes or no" question asking the jury to determine whether the negligence of anyone, as between appellees, Cruz, and appellant, was the proximate cause of the injury in question. Appellant contends that there was no legal ground for including appellant in that question, and no evidence to support it. Related to this point is appellant's ninth point, which complains that the jury's responses to questions one and four, (1) that appellant's negligence, not appel-

---

**15.** A defect for purposes of an implied warranty of merchantability claim means "a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." PJC 71.08. Thus, it differs from the defect in a design defect inquiry most notably by eliminating the dangerousness requirement of a defect under strict liability.

**16.** Appellees contend (1) that the submission of this theory would have been duplicative of other issues submitted and (2) that the jury's responses to the negligence and design defect issues demonstrated that it believed that appellant's injuries were not attributable to any alleged defects in the car, or to any acts/omissions of the appellees.

lees's, was a proximate cause of her injuries, and (2) that her acts/omissions accounted for one hundred percent of her injuries, vis-a-vis appellees, are against the great weight and preponderance of the evidence.

In point eight, appellant relies on *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), in asserting that the failure to wear a seatbelt is not evidence of contributory negligence. Thus, she alleges, there was no legal ground upon which to submit appellant's negligence as an issue. Appellant is correct in her assertion that, under *Pool,* a party cannot be considered contributory negligent for not wearing a seatbelt.[17] However, in this case, there was some evidence that appellant was actually the driver of the vehicle. A court must submit questions raised by the pleadings and the evidence. TEX.R. CIV. P. 278. In their first amended answer, appellees claimed that appellant committed negligent acts prior to the accident which were the proximate cause of the accident and her injuries. At trial, Cruz testified that appellant was driving the vehicle. In determining the propriety of the charge, we do not consider whether the evidence was factually sufficient to submit the issue, but only whether it was supported by any evidence. *Elbaor,* 845 S.W.2d at 243; *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965). Thus, the court did not err in including appellant as a possibly negligent person in the charge.

With respect to point nine, we note that the court's question follows the mandate of Texas Rule of Civil Procedure 277, which directs courts, in cases where the jury is required to apportion loss among parties, to submit a question inquiring what percentage, if any, of the negligence or causation, that caused the occurrence or injury in question,

is attributable to each of the persons found to be culpable. TEX.R. CIV. P. 277. However, we decline to delineate sufficiency of the evidence regarding appellant's responsibility for her injuries because we consider these findings immaterial to the take-nothing judgment.

The judgment in this case is based on the jury's refusal to find that appellees' alleged negligence was a proximate cause of her injuries or that any defect was the producing cause of appellant's injuries. Appellant does not challenge the jury's failure to find appellees liable, and therefore we are bound by those findings. *See Wisenbarger v. Gonzales Warm Springs Rehabilitation Hosp., Inc.,* 789 S.W.2d 688, 694 (Tex.App.—Corpus Christi 1990, writ denied). Because the jury found appellees' alleged acts and omissions to be zero percent responsible for the injuries, any additional findings regarding the negligence of appellant or Cruz are immaterial to the judgement. *Williford Energy Co. v. Submergible Cable Serv., Inc.,* 895 S.W.2d 379, 391–92 (Tex.App.—Amarillo 1994, no writ); *See Hancock v. City of San Antonio,* 800 S.W.2d 881, 885 (Tex.App.—San Antonio 1990, writ denied) (error in submission of issues is harmless if net result is that plaintiff receives zero damages). A finding is immaterial if it will not affect the judgment. *Fleet v. Fleet,* 711 S.W.2d 1, 2 (Tex.1986). The court did not abuse its discretion in refusing to grant a new trial on this basis. Points eight and nine are overruled.

In point ten, appellant complains that defense counsel made persistent improper comments during closing argument which created incurable error, and the trial court

---

**17.** We do note, however, that the *Pool* Court did not entirely discount the relevance of seat-belt evidence in every scenario, such as a products liability case. In fact, the Court wrote

> [T]he *Duncan v. Cessna* formula remains: "[T]he system we adopt will allow a comparison of plaintiff's conduct, whether it is characterized as assumption of risk, misuse, of failure to mitigate or avoid damages, with the conduct or product of a defendant, whether the suit combines crashworthiness or other theories of strict products liability, breach of warranty, or negligence."

*Id.* at 633 (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984)). Indeed, the *Duncan* Court had specifically adopted a comparative apportionment system in strict liability cases as a "feasible and desirable means of eliminating confusion in strict liability cases." *Duncan,* 665 S.W.2d at 427. Thus her failure to wear a seatbelt, although not considered "contributory negligence," is an appropriate consideration in analyzing the cause of injury.

erred by not granting a new trial on this basis. Appellant contends that defense counsel's closing argument, wherein he appealed to the jury to send a message that justice is not "for sale" in Hidalgo County, was harmful.

In order to warrant a reversal based on improper jury argument, a complainant must prove a number of things: (1) that an improper argument was made, (2) that was not invited or provoked, (3) that error was preserved either by objection, motion to strike, or motion for mistrial, and (4) was not curable by an instruction, prompt withdrawal of the statement, or reprimand by the court. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979). Moreover, in order to warrant reversal, a complainant must prove that such argument, by its nature, degree, and extent, constituted reversibly harmful error, based on an examination of the entire record to determine the argument's probable effect on a material finding. *Id.* The complainant is required to prove that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence. *Id.* at 840. Only in those rare instance where argument is incurable, is error preserved in the absence of an objection. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex.1968); *Standard Fire*, 584 S.W.2d at 839–40; *Cecil*, 893 S.W.2d at 48.

During closing argument, counsel for Hyundai Motor America appealed to the jurors, as citizens of Hidalgo County, to essentially make a statement to those persons from other parts of Texas that, contrary to general presumptions, justice is not for sale in their county. Counsel alluded to the fact that the accident occurred outside Hidalgo County, and neither appellant, nor Cruz, nor any of the attorneys save one, were from the Rio Grande Valley. The implication drawn from such allusions was that this case was filed in Hidalgo County under such ostensibly erroneous presumptions.

Appellant did not object in any manner to the this argument, and therefore has not preserved the matter for our review, unless we find that this argument was so egregious that it constituted incurable error. We do not find it so. While counsel did make reference to the fact that all parties to the suit and all attorneys save one live outside of Hidalgo county, he did not engage in any type of prejudicial haranguing of appellant's foreign residency. It does not fall into the category of improper argument which has been found by other courts to be incurable. *See Standard Fire Ins.*, 584 S.W.2d at 840, (mentioning that appeals to racial prejudice, use of epithets such as "liar," "cheat," and "faker," and unsupportable charges of perjury are the type of argument which is incurable). Counsel's plea to the jury to "do the right thing" based on the facts rather than sympathy is well within the logical parameters of a closing argument, and indeed such admonition was made by the court in its charge. Point ten is overruled.

The judgment of the trial court is AFFIRMED as to appellant's strict liability and negligence causes of action, and REVERSED and REMANDED for a new trial on her implied warranty of merchantability cause of action.

SEERDEN, Chief Justice, dissenting.

Because I believe that the trial court's judgment is correct and should be completely affirmed, I dissent. I would hold that the jury's rejection of a strict liability design defect theory conclusively negated the elements necessary for Rodriguez to recover under her alternate theory of implied warranty of merchantability.

Rodriguez alleged and attempted to prove at trial that the car in which she was traveling was not crashworthy, in that the roof structure and restraint systems were defectively designed which caused her injuries to be more serious than they otherwise would have been in this crash. A question was submitted to the jury under the theory of strict liability design defect, asking whether a design defect rendering the car unreasonably dangerous was a producing cause of Rodriguez's injury. The jury responded negatively to the question.

Breach of the implied warranty of merchantability provides an alternative remedy

to strict liability in tort with respect to injuries suffered from a defective product which is proven not to be "fit for the ordinary purposes for which such goods are used." *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 459–62 (Tex.1980); TEX. BUS. & COM.CODE ANN. § 2.314(b)(3) (Vernon 1994). Breach of the implied warranty of merchantability still requires proof of a defect. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex.1989). However, while an implied warranty "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, a strict liability "defect" means a condition of the product that renders it unreasonably dangerous to persons or property. *Id.* at 444–45.

In some cases, a product may be unfit for its ordinary purposes without being unreasonably dangerous. For example, a lawnmower which fails to cut the grass may breach the implied warranty of merchantability as being unfit for its ordinary purposes. However, the defect would not fall within the strict liability concept of a design defect because of the absence of any unreasonable danger posed by the defect to person or property. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79–80 (Tex.1977) (strict liability does not apply to a purely economic loss in the absence of physical harm to the person or his property). However, if the only defect alleged under either theory involves the dangerousness of the product, the determination of "defect" for purposes of the strict liability tort may also resolve the issue of "defect" with regard to the implied warranty of merchantability. *See Costilla v. Aluminum Co. of America*, 835 F.2d 578 (5th Cir.1988).

In the present case, Rodriguez never alleged that the car was defective with regard to its normal function of transporting people and property, but only that it was defective with regard to its crashworthiness. The crashworthiness of a car can only be evaluated in terms of avoiding unreasonable danger to the occupants, whether analyzed directly in terms of a strict liability defect, or indirectly in terms of the product's fitness for its purpose of avoiding unreasonable danger. The "defect" for purposes of either strict liability or implied warranty must meet the same test. Accordingly, the jury's finding of no strict liability defect, and therefore no unreasonable danger, with regard to the crashworthiness of the car conclusively negates the implied warranty theory as well.

With regard to causation, I agree with the majority that there is a difference between producing cause and proximate cause. Proximate and producing cause differ in that, while both require a showing of causation in fact, foreseeability is an element of proximate cause, but not of producing cause. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). In the present case, the less stringent standard of "producing cause" has already been rejected by the jury. Therefore, if the alleged defects were not a producing cause of injury, they could not have met the more stringent test of proximate cause, and the jury's negative answer to the former standard conclusively negated the latter as well.[1]

Accordingly, when we apply the jury finding, that no strict liability design defect was a producing cause of Rodriguez's injuries, to the elements of her implied warranty theory, we must conclude that this theory has also been conclusively negated.

I would affirm the judgment of the trial court.

1. The reverse, of course, would not be true. The jury's negative finding on the more stringent standard of proximate cause would not foreclose a positive finding under the less stringent standard of producing cause.